

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOUSE OF EUROPE FUNDING I LTD, and
ERSTE ABWICKLUNGSANSTALT,

                Plaintiffs,

    -against-

WELLS FARGO BANK, N.A. and
COLLINEO ASSET MANAGEMENT
GMBH,

                Defendants.

Case No:

**COMPLAINT**

Plaintiffs House of Europe Funding I Ltd. ("HOE I" or the "Issuer") and Erste

Abwicklungsanstalt ("EAA"), by and through their undersigned attorneys, for their Complaint

against defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Collineo Asset Management

Gmbh ("Collineo") allege as follows:

### INTRODUCTION

1.      This action arises out of defendants Wells Fargo's and Collineo's rampant

mismanagement of, and flagrant disregard for, the duties and obligations that they promised to

fulfill to HOE I, an issuer of collateralized debt obligations ("CDOs"). Wells Fargo, as HOE I's

trustee and collateral administrator, and Collineo, as HOE I's asset manager, were entrusted to

safeguard that any purchases for HOE I's portfolio complied with strict "Eligibility Criteria" set

forth in HOE I's governing indenture, including limiting HOE I's investment in other CDO

securities—a particularly risky form of investment—to no more than 15% of HOE I's total

investment portfolio. Rather than fulfill these clear duties, Wells Fargo and Collineo abdicated

their responsibilities, allowing HOE I's investments in other CDOs to far exceed indenture

limitations. Wells Fargo and Collineo then concealed their breaches by issuing investor reports

1

each month reporting, falsely, that certain of HOE I's Eligibility Criteria had "Passed," when in fact those Eligibility Criteria had "Failed." Separately, Wells Fargo also mismanaged its duty to carefully disseminate HOE I's proceeds pursuant to the "Priority of Payment" provisions in HOE I's indenture. Its failure to follow such protocols triggered a completely avoidable Event of Default. As a result of Wells Fargo's and Collineo's repeated breaches of their contractual duties and reckless mismanagement of their responsibilities, HOE I—and ultimately its investors— have suffered massive damages that were otherwise avoidable. HOE I and EAA bring this action seeking recompense from Wells Fargo and Collineo for the more than $160 million (or €120 million) in damages they caused.

2.      HOE I is an issuer of CDOs. A CDO issuer is a special purpose vehicle that raises money by issuing and selling CDO securities to investors, then uses that money to purchase a portfolio of assets consisting of bonds, loans or other debt obligations. The cash flows from the underlying assets are used primarily to make interest and principal payments to the investors who bought the CDO securities.

3.      As HOE I has no employees, all of its operations are conducted by third parties that are retained to manage its affairs. Wells Fargo was retained as HOE I's trustee and collateral administrator to be the primary party responsible for ensuring that HOE I would operate in conformance with its governing indenture and that its funds would be properly invested, managed and disseminated to investors and others. Collineo was retained as HOE I's asset manager, to be responsible for identifying assets for purchase by HOE I, consistent with HOE I's governing indenture and other agreements.

4.      The central responsibilities of Wells Fargo and Collineo included ensuring that any assets that were selected and purchased for HOE I's portfolio complied with strict Eligibility

2

Criteria set forth in HOE I's indenture. These Eligibility Criteria include limitations on the amount of any particular asset type that HOE I may purchase to help reduce the risk of loss that could occur if HOE I were to have too much of its portfolio concentrated in a particular type of asset.

5.      Eligibility Criteria are so widely regarded as a critical factor in evaluating the risk associated with investing in CDO securities that the ratings agencies use these criteria as inputs for their ratings models. And, because the investors in CDO securities have no control over the day-to-day management of the CDO issuer (including the purchase and sale of assets), compliance with the Eligibility Criteria is crucial to protecting the value of their investment in the CDO securities.

6.      Among other restrictions, HOE I's Eligibility Criteria limit the amount of other CDO securities in which HOE I may invest to no more than an amount which is, in effect, 15% of HOE I's total investment pool. As it is considered particularly risky for a CDO issuer to invest in other CDO securities, this concentration limit was designed to minimize HOE I's exposure to other CDOs and thereby reduce the risk of loss to HOE I and its investors.

7.      Notwithstanding these clear Eligibility Criteria restrictions, Wells Fargo and Collineo have repeatedly caused HOE I to purchase CDO securities in excess of the 15% cap, resulting in HOE I having far greater exposure to losses by other CDOs than was ever intended or permitted under the terms of HOE I's indenture. Indeed, due to Wells Fargo's and Collineo's blatant disregard for their contractual obligation to ensure compliance with HOE I's Eligibility Criteria, HOE I has invested in over $171 million (or €129.5 million) of CDO securities in violation of the concentration limits set forth in HOE I's indenture.

8.      Moreover, Wells Fargo compounded its breaches by effectively concealing their existence by repeatedly issuing false monthly financial reports (the "Monthly Reports") that it was retained to prepare as HOE I's collateral administrator.  In these Monthly Reports, Wells Fargo, with assistance from Collineo, was obligated to set forth the total amount of CDO securities held by HOE I as well as the percentage of CDO securities held relative to HOE I's total investment pool, and to state whether HOE I's Eligibility Criteria had thus been satisfied. However, Wells Fargo and Collineo repeatedly miscalculated these amounts, including only some of the CDOs held by HOE I in their calculations, thereby consistently misrepresenting that the 15% cap on CDO securities purchased by HOE I had been satisfied. In reality, Wells Fargo's and Collineo's reckless derogation of their duties had allowed the cap to be exceeded.

9.      Further demonstrating Wells Fargo's utter disregard for its duties, Wells Fargo has also failed in its other central function of collecting the cash that HOE I receives from its investments and disseminating it pursuant to "Priority of Payment" provisions set forth in HOE I's indenture.  Whereas those Priority of Payment provisions set forth a clear payment protocol (referred to as the "waterfall") that Wells Fargo is required to follow, Wells Fargo recklessly disseminated payments in breach of those provisions in June 2011, triggering a completely avoidable Event of Default under the HOE I indenture.

10.      Defendants' wrongful conduct has caused substantial losses to HOE I and its investors, including EAA.  The CDO securities that Wells Fargo and Collineo purchased for HOE I in breach of the Eligibility Criteria have performed abysmally.  In fact, over 80% of the CDOs that Wells Fargo and Collineo improperly purchased have already defaulted and are now worth almost nothing, resulting in realized losses to HOE I and its investors of approximately $143 million (or €107 million).  The remaining notional amount of non-defaulted CDO securities

are expected to cause further losses of approximately $20 million (or €15 million). As a result, HOE I has suffered, or is expected to suffer, nearly a complete loss on these CDO investments, resulting in damages to HOE I and its investors, including EAA, in excess of $160 million (€120 million). By contrast, the non-CDO assets HOE I purchased experienced nowhere near these losses. Indeed, as of December 2012, HOE I had realized *zero* losses on its non-CDO investments, underscoring that Wells Fargo's and Collineo's failure to comply with the Eligibility Criteria with respect to the CDO securities it purchased caused losses that otherwise would have been avoided.

11.     Notwithstanding Wells Fargo's and Collineo's clear culpability for these losses, Wells Fargo has failed to take any action to seek redress on behalf of HOE I and its investors. In fact, EAA, as HOE I's senior investor and Controlling Party under the HOE I indenture, exercised its contractual right to direct Wells Fargo to bring proceedings on HOE I's behalf for these violations. Wells Fargo has failed to do so. Plaintiffs therefore assert this action against Wells Fargo and Collineo for breaches of contract, seeking damages to compensate HOE I and EAA for the harm suffered as a result of Defendants' misconduct.

## THE PARTIES

12.     Plaintiff HOE I is a special purpose company incorporated under the laws of the Cayman Islands.

13.     Plaintiff EAA is a German public agency established under the German Financial Markets Stabilization Act. EAA holds 100% of the Class A1 Notes issued by HOE I and is the Controlling Party under HOE I's Amended and Restated Indenture, dated June 10, 2005, between, among others, HOE I and Wells Fargo (the "Indenture"). A true and correct copy of

the Indenture is attached as Exhibit A.  EAA is also a third party beneficiary of the HOE I

transaction documents, including the Indenture.

14.     Defendant Wells Fargo is a national banking association incorporated under the

laws of the United States.  On information and belief, Wells Fargo's principal place of business

is in Sioux Falls, South Dakota. Wells Fargo is the trustee and collateral administrator for HOE I.

15.     Defendant Collineo is a financial services company incorporated under the laws

of Germany.  Collineo is the asset manager for HOE I.

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction over this action pursuant to 12 U.S.C. § 632.

Wells Fargo is a corporation organized under the laws of the United States, and this suit arises

out of a transaction involving international or foreign banking, and/or out of other international

or foreign financial operations, in that it involves the improper purchase and reporting of foreign-

issued securities for a CDO issuer that is incorporated under the laws of the Cayman Islands.

17.     This Court has personal jurisdiction over Wells Fargo because Wells Fargo

transacts business within New York.  Wells Fargo has also consented to the jurisdiction of this

Court in Section 14.11 of the Indenture and Section 12 of the Collateral Administration

Agreement, dated June 10, 2005 (the "Collateral Administration Agreement").  A true and

correct copy of the Collateral Administration Agreement is attached as Exhibit B.

18.     This Court has personal jurisdiction over Collineo because Collineo submitted to

the jurisdiction of this Court pursuant to Section 12 of the Collateral Administration Agreement

and Section 5.07 of the Asset Management Agreement, dated June 10, 2005 (the "Asset

Management Agreement"). A true and correct copy of the Asset Management Agreement is

attached as Exhibit C.

19.     Venue is proper because both Wells Fargo and Collineo have expressly agreed that this Court is an appropriate venue for the claims asserted in the Complaint.

## FACTUAL ALLEGATIONS

### I.     The HOE I CDO

20.     HOE I is an issuer of CDOs which was first formed in 2003 and then restructured in 2005 by WestLB AG.  A CDO issuer is a special purpose vehicle that raises money by issuing and selling securities to investors and then uses that money to purchase a portfolio of assets (often referred to as the CDO collateral), usually consisting of bonds, loans or other debt obligations.  The cash flows from the underlying assets are used primarily to make interest and principal payments to the investors who bought the CDOs issued by the CDO issuer.  Whether CDO investors will be repaid in full depends primarily on the CDO issuer's structure and the performance of its portfolio assets.

21.     A CDO issuer typically has no employees and thus generally acts through third parties that it retains to conduct its business and oversee its affairs.  One of the primary third parties that runs the CDO issuer's affairs is its trustee, which is responsible for holding the CDO issuer's assets for the benefit of the CDO investors, enforcing the terms of the CDO indenture, monitoring and reporting on collateral performance, and disbursing cash to the CDO stakeholders (including the CDO noteholders) according to the provisions in the indenture governing the CDOs' issuance.  The CDO investors thus rely on the CDO trustee to ensure that their rights and entitlements are respected.

22.     The CDO trustee plays an especially important role with respect to the CDO issuer's investments in its asset portfolio.  According to one commentator:

> The CDO trustee is one of the very significant agencies in CDOs
> .... The trustee performs the functions of independent oversight
> over the manager, while also observing compliance with the

> indenture deed.... Trustees keep a constant vigil over new trades
> conducted, particularly the acquisition of new investments. The
> trustees have access to databases such as Bloomberg to
> independently verify credit ratings, maturity dates, type of security,
> default status, interest rates, currency and issuer domicile, to
> ensure compliance with the indenture provisions.

Vinod Kothari, *Securitization: The Financial Instrument of the Future* at p. 434 (2006).

23.     HOE I's trustee is Wells Fargo. Wells Fargo's duties as HOE I's trustee (as well

as the operation of HOE I itself, including the conditions under which CDO collateral may be

purchased) are governed by the Indenture.

24.     In addition to serving as HOE I's trustee, Wells Fargo was also retained to serve

as HOE I's collateral administrator. Wells Fargo's duties as collateral administrator are

governed by the Collateral Administration Agreement. As collateral administrator, Wells Fargo

is obligated to carry out certain separate duties and functions, apart from its duties as trustee

under the Indenture, including maintaining and updating a database of HOE I's collateral pool

and preparing a Monthly Report.

25.     The CDO asset manager also plays an important role in the selection of a CDO

issuer's collateral portfolio. According to Ian Giddy, Professor of Finance at the Stern School of

Business at New York University, "Market consensus is that the [asset] manager is the most

important factor in a performance of a CDO." Ian Giddy, *The CDO Product* (2008). HOE I's

asset manager is Collineo. The obligations of Collineo are set forth in the Asset Management

Agreement. Pursuant to that agreement, Collineo is obligated to make recommendations for the

purchase of HOE I assets in accordance with the Eligibility Criteria set forth in the Indenture.

26.     Plaintiff EAA holds 100% of the Class A1 notes issued by HOE I. As the most

senior noteholder, EAA is the "Controlling Party" under, and third party beneficiary to, the

Indenture. As such, EAA has a number of special rights and entitlements, including, pursuant to

Section 5.13 of the Indenture, the right to direct Wells Fargo, as trustee, to bring proceedings to enforce any rights arising under the Indenture.

## II.   HOE I's Eligibility Criteria

27.   The key feature impacting the returns to CDO investors is the performance of the CDO issuer's underlying portfolio collateral. In other words, "[o]ne of the key features of a CDO is that its value depends entirely on the performance of the asset pool." Andrew Chisholm, *Derivatives Demystified: A Step-by-Step Guide to Forwards, Futures, Swaps and Options*, at 203 (2d ed. 2010). This means that selection of the CDO collateral, both initially and throughout the life of the CDO, is of utmost importance to the investors in CDO securities.

28.   HOE I has an actively managed CDO portfolio. In contrast to a static CDO portfolio, where the portfolio remains relatively unchanged aside from amortization of the assets, in an actively managed CDO portfolio, the underlying assets in the portfolio can be bought and sold and therefore change over time. Because of this, investors in HOE I's CDO securities will not know at the time of their investment what the composition of the underlying collateral portfolio will be over the life of the CDO. Instead, HOE I's investors rely upon the identities of the asset manager, collateral administrator and trustee, as well as certain restrictive investment guidelines, *i.e.,* the Eligibility Criteria, to maintain the credit quality of the CDO portfolio.

29.   HOE I's Eligibility Criteria are set forth in its Indenture and impose limits on the type and nature of collateral in which the CDO issuer may invest, including by reference to diversity, weighted average rating, maturity and spread. The diversity-related restrictions include concentration limits, which restrict the amount of certain types of assets in which the CDO issuer may invest relative to its total investment pool, for instance by reference to the asset's issuer, industry, geography, quality or type. By limiting HOE I's exposure to particular classes and concentrations of assets, the Eligibility Criteria help ensure that HOE I's collateral

portfolio is diverse, thus reducing the risk of loss to HOE I and its investors. As set forth below,

Collineo, as asset manager, and Wells Fargo, as trustee and collateral administrator, are

responsible for ensuring that HOE I's purchases of assets comply with the Eligibility Criteria.

**A.     The Eligibility Criteria's 15% Concentration Limit For CDO Securities**

30.     Investment by a CDO issuer in other CDOs is considered an especially risky type

of investment.  For this reason, typical Eligibility Criteria will limit the amount of other CDOs in

which a CDO issuer may invest.  For example, as one commentator noted:

> [S]ome types of securitisations are judged to be more risky investments than
> others.  This is so for (underlying) synthetic CDOs ….  In practical terms a square
> [*i.e.*, a CDO that invests in other CDOs] may therefore include portfolio
> guidelines that  limit the exposure to a particular type of securitisation in terms of
> notion amount or as a percentage of the overall underlying portfolio.

Jan Job de Vries Robbe, "Synthetic Squares, or the Securitisation of Russian Dolls," in Jan Job

de Vries Robbe and Paul Ali, *Securitisation of Derivatives and Alternative Assets Classes:*

*Yearbook 2005*, at 19 (2005).  Such restrictions on CDO investments protect investors from a

concentrated exposure to a potentially high risk type of asset and thus reduce the risk of loss for

the CDO issuer and its investors.

31.     In the case of HOE I, its Eligibility Criteria impose a concentration limit for CDO

securities of 15% relative to HOE I's total investment pool.  This restriction is set forth in

Section 12.02 of the Indenture, titled "Eligibility Criteria and Trading Restrictions," which

provides that reinvestments may only be made "in an Underlying Asset if, after such investment,

the following criteria (the 'Eligibility Criteria') are satisfied, or if such criteria have not been

satisfied prior to the addition of such Underlying Asset, not made worse." Section 12.02(28)

then provides the specific Eligibility Criteria concerning CDOs, only permitting investments in

"CDO Securities" if "the Aggregate Principal Amount of all CDO Securities does not exceed

15% of the Maximum Investment Amount." The Maximum Investment Amount is defined to effectively include the total amount of HOE I's investment portfolio.

**B.      Collineo's Obligation To Comply With The Eligibility Criteria**

32.      As asset manager, Collineo is obligated to ensure that all purchases of assets for HOE I's portfolio comply with the Eligibility Criteria.

33.      For example, Section 2.01(c) of the Asset Management Agreement provides that Collineo may identify assets for purchase by HOE I "in accordance with the Eligibility Criteria."

34.      Pursuant to Section 2.03(f) of the Asset Management Agreement, Collineo is also expressly required to comply with such "duties and responsibilities as may be required by the Asset Manager as set forth in the Indenture," which, in Section 12.02 , obliges Collineo to "instruct the Indenture Trustee [*i.e.*, Wells Fargo]" to purchase assets on behalf of HOE I "subject to satisfaction" of the Eligibility Criteria.

35.      In other words, pursuant to the Indenture and Asset Management Agreement, one of Collineo's primary obligations as HOE I's asset manager is to identify assets for purchase by HOE I in compliance with the Eligibility Criteria.

**C.      Wells Fargo's Obligation To Ensure Compliance With Eligibility Criteria**

36.      Wells Fargo's duties as HOE I's trustee and collateral administrator include the obligation to ensure that all purchases of assets for HOE I's portfolio comply with the Eligibility Criteria.

37.      For example, Wells Fargo, as trustee, is responsible for effectuating purchases on behalf of HOE I. Specifically, Section 10.02(f) of the Indenture, which permits Collineo, as asset manager, to identify assets for purchase, provides that Wells Fargo shall only "reinvest Principal Proceeds in Underlying Assets selected by the Asset Manager *as permitted under and in accordance with the requirements of Article XII* ...." Wells Fargo is thus prohibited from

purchasing assets at the direction of the Asset Manager unless they would satisfy the requirements of Article XII of the Indenture—which includes the Eligibility Criteria and the 15% concentration limit for CDO securities.

38. Wells Fargo is not permitted to simply trust that Collineo's request to purchase an asset will be in compliance with the Indenture's Eligibility Criteria. Rather, the Indenture expressly sets forth the requirement in Section 6.01(a) that when Wells Fargo receives any certification or report pursuant to the Indenture—which encompasses the request by the Asset Manager to purchase an asset — Wells Fargo "shall be under a duty to examine the same to determine whether or not they substantially conform to the requirements of this Indenture." Wells Fargo, as trustee, is thus prohibited from purchasing assets at the direction of Collineo unless the requirements of Article XII of the Indenture, which include the Eligibility Criteria and the 15% concentration limit for CDO securities, are satisfied.

39. Wells Fargo is further obligated in its role as collateral administrator to confirm that all assets which are intended to be added to HOE I's portfolio satisfy the Eligibility Criteria under Section 12.02 of the Indenture before such assets are added to the CDO collateral portfolio. Specifically, Section 2(e) of the Collateral Administration Agreement provides:

> In reference to Section 12.02 of the Indenture, Wells Fargo shall perform the following functions in connection with and as of the date of the Grant of any obligation or security proposed to be included in the Collateral as a Pledged Underlying Asset … (xxiii) If such Underlying Asset is a CDO Security, determine if the Aggregate Principal Amount of all such Underlying Assets … does not exceed 10% [*sic* — increased to 15% when the Indenture was amended in 2005] of Maximum Investment Amount.

Pursuant to that provision, Wells Fargo is expressly obligated in its role as collateral administrator to confirm that any CDO security purchased for inclusion in HOE I's portfolio complies with the Eligibility Criteria's limitations.

40.     The Indenture and the Collateral Administration Agreement vest final investment decision-making authority in Wells Fargo, a non-German entity, in part because having such decisions made outside Germany was necessary to prevent HOE I from being deemed a German entity for tax purposes.

41.     Wells Fargo is thus under multiple contractual obligations to both ascertain whether a direction to purchase a CDO security on behalf of HOE I complies with the Indenture's Eligibility Criteria and ensure that any purchase of a CDO security it makes on behalf HOE I is consistent with the Eligibility Criteria before such CDO security becomes part of HOE I's collateral portfolio.

**D.     Wells Fargo's Monthly Trustee Report Must Confirm Compliance With The Eligibility Criteria**

42.     Each month, Wells Fargo is also responsible for preparing and disseminating a Monthly Report setting forth certain specified information concerning HOE I.  Among other information, the Monthly Report is required to include information as to HOE I's collateral portfolio, including compliance with the requirements set forth in the Eligibility Criteria.  Most relevantly, the Monthly Report must state the aggregate amount of CDO securities purchased by HOE I and whether these amounts meet or exceed the prescribed concentration limit.

43.     Under Section 2(b)(v) of the Collateral Administration Agreement, Wells Fargo, as collateral administrator, is obligated to, among other things:

> Prepare and timely deliver … each Monthly Report … in the manner and to the parties to whom the Issuer is required to deliver such reports pursuant to the Indenture.

Both the Collateral Administration Agreement and the Indenture set forth the specific information that must be included in the Monthly Report.  In addition, pursuant to Section 2(c) of

the Collateral Administration Agreement, each report must set forth the total amount of CDO securities held by HOE I and the maximum permitted amount of such securities.

44.     The Indenture also includes additional obligations upon Wells Fargo, as trustee, to ensure the accuracy of the Monthly Report.  Specifically, pursuant to Section 10.06(a), Wells Fargo, in its capacity as trustee, is under a separate and independent obligation to "compare the information contained [in each Monthly Report] to the information contained in its records with respect to the Collateral and shall … notify the Issuer and the Asset Manager if the Information contained in the Monthly Report does not conform to the information maintained by the Indenture Trustee with respect to the Collateral."

45.     Pursuant to Section 2(g) of the Collateral Administration Agreement, Collineo is obligated to "cooperate with Wells Fargo in conjunction with the preparation by Wells Fargo of the Monthly Reports."  That same provision also obligated Collineo to "review and verify" the contents to those reports, meaning that Collineo is also under an obligation to ensure the accuracy of the information contained in the Monthly Reports.

46.     Thus, in sum, Wells Fargo has multiple obligations to ensure compliance with HOE I's Eligibility Criteria: *first*, as trustee, it must confirm all proposed purchases comply with the Eligibility Criteria; *second*, as collateral administrator, it must confirm that any purchased asset complies with the Eligibility Criteria before it is added to HOE I's collateral; *third*, as collateral administrator, it must issue Monthly Reports that correctly state whether the Eligibility Criteria are satisfied; and *fourth*, as trustee, it must confirm the accuracy of the Monthly Reports before they are issued to investors.

47.     Similarly, Collineo also has multiple contractual obligations to ensure compliance with the Eligibility Criteria: *first*, as asset manager, it must ensure that any purchases it proposes

14

comply with the Eligibility Criteria; *second*, as asset manager, it must assist Wells Fargo in the preparation of the Monthly Reports that correctly state whether the Eligibility Criteria are satisfied; and *third*, as asset manager, it must review and verify the accuracy of the Monthly Reports before they are issued to investors.

48.    These extensive and overlapping obligations to ensure compliance with the Eligibility Criteria demonstrate the paramount importance of the Eligibility Criteria to HOE I and its investors.

III.    **Wells Fargo And Collineo Breached Their Obligations Under The Indenture, Collateral Administration Agreement and Asset Management Agreement**

49.    Wells Fargo and Collineo have breached their obligations under the Indenture, Collateral Administration Agreement and Asset Management Agreement, on multiple occasions and over many years, by causing HOE I's investments in other CDOs to far exceed the Eligibility Criteria limitations.  Wells Fargo and Collineo further compounded and concealed their breaches by misrepresenting in Monthly Reports that they had complied with HOE I's eligibility criteria when they had not.  The improperly purchased CDO assets have performed abysmally.  And, as a result of Wells Fargo's and Collineo's repeated breaches of their contractual duties, HOE I—and ultimately its investors, including EAA—have suffered massive losses that would otherwise have been avoided.

A.    **Wells Fargo And Collineo Purchased CDOs In Breach Of The Eligibility Criteria**

50.    Notwithstanding that the Indenture clearly limits the amount of CDO securities in which HOE I may invest to 15%, Wells Fargo and Collineo have caused HOE I to purchase CDO securities in breach of the concentration limits on multiple occasions.  In fact, since April 2006, Wells Fargo and Collineo have caused HOE I to purchase over $171 million (or €129.5

million) of CDO securities in at least six separate transactions, all in breach of the Eligibility
Criteria. For example:

- In April 2006, Wells Fargo and Collineo caused HOE I to purchase over $26 million
  (or €20 million) of CDO securities, bringing the total percentage of CDO assets held
  by HOE I up to *21.14%*, well in excess of the 15% concentration limit set out in the
  Eligibility Criteria.  This investment incurred its first default in July 2010 and has
  already caused a realized loss through a partial write-down of $23 million (or €17.25
  million). The remaining notional investment is expected to cause nearly a complete
  loss.

- In June 2007, Wells Fargo and Collineo caused HOE I to purchase over $53.5 million
  (or €40 million) worth of CDO securities in two separate transactions, representing
  4% percent of the total CDO securities held by HOE I, bringing the total percentage
  of CDO securities held by HOE I at that time up to 19.50*%*.  This investment incurred
  its first default in April 2008 and has already caused a realized loss of nearly 100%.

- In July 2007, Wells Fargo and Collineo caused HOE I to purchase over $66 million
  (or €50 million) of CDO securities in two separate transactions, increasing the CDO
  concentration level at that time to *21.92%*.  This investment incurred its first default
  in November 2008 and has already caused a realized loss of 100% through a total
  write-down of these securities.

51.     These unlawfully purchased CDO securities have significantly deteriorated in
value, causing significant losses to HOE I and its investors.  In fact, over 80% of the CDO assets
that Wells Fargo and Collineo improperly allowed to be purchased have already defaulted and
are now worth almost nothing, resulting in realized losses to HOE I and its investors of

approximately $143 million (or €107 million).  The remaining improperly purchased CDO assets

are expected to default soon.  In total, HOE I has suffered, or is expected to suffer, over $160

million (€120 million) in losses as a result of Wells Fargo's and Collineo's breaches.

**B.    Wells Fargo And Collineo Compounded and Concealed Their Breaches Through False Monthly Reports**

52.    Moreover, until recently, Wells Fargo and Collineo compounded and concealed

their breaches of the Eligibility Criteria by misrepresenting the amount of CDO securities held

by HOE I in the Monthly Reports.

53.    Starting in April 2004, each Monthly Report included two separate categories for

listing CDO assets held by HOE I—the "CBO/CDO/CLO" category and the "CDO Structured

Product" category.  These categories—or buckets—are listed nowhere in HOE I's governing

documents and were simply made up out of thin air by Wells Fargo and Collineo.  Moreover,

when Wells Fargo and Collineo performed the required concentration calculations, they only

counted one of these buckets—the "CBO/CDO/CLO" bucket—towards the 15% cap, resulting in

continued violations of the Eligibility Criteria and further improper purchases of CDO securities

in violation of the Indenture without detection.  Moreover, Wells Fargo and Collineo routinely

omitted some CDO securities held by HOE I from the Monthly Report altogether, including

them in neither the CBO/CDO/CLO bucket nor the CDO Structured Product bucket.

54.    For example, in the April 2006 Monthly Report, Wells Fargo reported that the

"CBO/CDO/CLO" bucket included €76.6 million of assets and that the "CDO Structured

Product" bucket included €103 million of assets. Omitted from either bucket was €30 million of

CDO securities that were not reported at all.  Together, all of the CDO securities held by HOE I

at that time amounted to more than 21% of its Maximum Investment Amount—more than 40%

above the 15% cap in the Eligibility Criteria.  Wells Fargo nonetheless reported the CDO

concentration percentage as being only 7.73%, and falsely reported the "Limitation on CDO Securities Test" as "Passed." By dividing its CDO security holdings into two made-up separate buckets and omitting to list some CDO securities altogether, thereby misrepresenting the total amount of CDO securities held by HOE I, Wells Fargo and Collineo concealed their violation of the Eligibility Criteria from HOE I and its investors and falsely presented the Eligibility Criteria as being "Passed" when, in fact, the Eligibility Criteria had "Failed." Had Wells Fargo and Collineo properly reported the Eligibility Criteria failure, further violations of the Eligibility Criteria, and the losses that HOE I suffered as a result, would have been prevented.

C.    <strong><u>Wells Fargo Admitted Its Error And Corrected Its Reporting Practices</u></strong>

55.    In April 2011, Wells Fargo was contacted about the above discrepancies in the Monthly Report. In response, Wells Fargo acknowledged that its previous Monthly Reports had been inaccurate and agreed to change its practices going forward. In May 2011, for the first time, the Monthly Report included all CDO securities held by HOE I in calculating whether the concentration limit was met. However, Wells Fargo took no action to remedy its prior violations or compensate HOE I for the significant losses caused by its breaches.

IV.    <strong><u>Wells Fargo Caused HOE I To Default</u></strong>

Wells Fargo's reckless disregard for its duties to HOE I also led to an unnecessary and avoidable Event of Default under the Indenture. Specifically, on June 28, 2011, Wells Fargo disseminated the cash that was available as of that date for distribution to HOE I's investors and other stakeholders in violation of the Priority of Payments protocol set forth in Section 11 of the Indenture. Whereas the Priority of Payments provision sets forth a payment waterfall in which Wells Fargo is obligated to make any "Hedge Payments" due to a third-party hedge provider before making any interest payments to the holders of HOE I's Class A notes, Wells Fargo instead paid interest on the Class A notes without having first made the required Hedge

18

Payments.   This careless breach by Wells Fargo constituted an Event of Default under Section 5.01(c) of the Indenture pursuant to which an Event of Default occurs upon "the failure on any Payment Date to Disburse amounts available in the Payment Account in accordance with the Priority of Payments."

56.     Wells Fargo has provided no legitimate basis for its abject failure to follow the Priority of Payment requirements under the Indenture.  Indeed, when Wells Fargo was questioned about its improper payment of interest on the Class A notes without having first made the required Hedge Payments, Wells Fargo did not explain its actions with references to the Priority of Payments provision (or, in fact, *any* provision) of the Indenture.  Instead,  Wells Fargo stated simply that the payments were made "exactly as specified" by the "Note Valuation Report"—a report which is supposed to specify the amounts payable by Wells Fargo, as trustee, to the participants in the HOE I CDO on each payment date.  However, the Note Valuation Report was wrong, and it was Wells Fargo, in its role as the collateral administrator under Sections 2(b) and 2(d) of the Collateral Administration Agreement, that was responsible for accurately calculating the payments to be made and for specifying the amounts of such payments correctly in the Note Valuation Report.  In effect, then, Wells Fargo *blamed itself* for the improper distributions on the June 28, 2011 payment date, a clear admission to one of Wells Fargo's many errors, and emblematic of Wells Fargo's flagrant disregard for its essential duties as trustee and collateral administrator.

V.     **Wells Fargo Unreasonably Failed To Take Action To Seek Redress On Behalf Of HOE I And Its Investors**

57.     Despite the multiple breaches of HOE I's governing Indenture, Collateral Administration Agreement and Asset Management Agreement, resulting in an expected $160

million (€120 million) loss to HOE I, Wells Fargo has failed to take any action to seek redress on behalf of HOE I and its investors.

58.      On March 15, 2011, EAA, the Controlling Party under the Indenture, instructed Wells Fargo to institute proceedings on behalf of HOE I to seek redress for the losses suffered by HOE I as a result of the unlawful purchases of CDO securities made in breach of HOE I's governing agreements.  EAA offered to provide Wells Fargo with a reasonable indemnity for costs incurred litigating any such action in its capacity as trustee.  Wells Fargo failed to bring any action, despite being required to do so under the terms of the Indenture.

## VI.    Wells Fargo And Collineo Are Not Entitled To Indemnification For Defending Their Misconduct

59.      The Indenture, Collateral Administration Agreement and Asset Management Agreement provide that Wells Fargo and Collineo are not entitled to indemnification for expenses that arise out of acts or omissions constituting negligence, gross negligence or reckless disregard for their duties.  The breaches of the Indenture, Collateral Administration Agreement and Asset Management Agreement by Wells Fargo and Collineo described above were easily avoidable had Wells Fargo or Collineo been performing their duties with even minimal care and arose out of acts and omissions constituting Wells Fargo's and Collineo's negligence, gross negligence and reckless disregard for their duties.  Therefore, neither Wells Fargo nor Collineo is entitled to indemnification for any expenses they incur in connection with defending the claims asserted in this action.  Any payments disseminated by Wells Fargo, as trustee, to either itself or Collineo as indemnification for expenses incurred in connection with the claims asserted in this litigation constitute additional contractual breaches entitling HOE I and EAA to recovery of further damages in the amounts for which Wells Fargo and Collineo were improperly indemnified.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT
### (AGAINST WELLS FARGO AND COLLINEO)

60.     Plaintiffs repeat and reallege the foregoing allegations as though they were fully set forth here.

61.     HOE I and Wells Fargo are parties to the Indenture; HOE I, Wells Fargo and Collineo are parties to the Collateral Administration Agreement; and HOE I and Collineo are parties to the Asset Management Agreement, all dated June 10, 2005.  EAA is a third party beneficiary under those agreements.

62.     Section 12.02, together with Section 10.02(f) of the Indenture, Section 2(e)(xxiii) of the Collateral Administration Agreement and Sections 2.01(c) and 2.03(f) of the Asset Management Agreement prohibit Wells Fargo, as trustee and collateral administrator, and Collineo, as asset manager, from purchasing, or causing HOE I to purchase, assets for inclusion in HOE I's collateral portfolio in contravention of the Eligibility Criteria.  This includes an explicit prohibition on causing HOE I to purchase CDO securities in excess of the 15% concentration limit set forth in Section 12.02(28) of the Indenture.

63.     Since April 2006, Wells Fargo and Collineo have engaged in multiple breaches of the governing contracts, including Sections 12.02 and 10.02(f) of the Indenture, Section 2(e)(xxiii) of the Collateral Administration Agreement and Sections 2.01(c) and 2.03(f) of the Asset Management Agreement, by purchasing CDO securities on behalf of HOE I, or causing HOE I to purchase CDO securities, in breach of the Eligibility Criteria.

64.     In addition, Section 10.06(a) of the Indenture, together with Section 2(b)(v) of the Collateral Administration Agreement, obligates Wells Fargo to prepare and disseminate an accurate Monthly Report, which includes information as to HOE I's compliance with the

Eligibility Criteria. Wells Fargo, under Section 10.06(a) of the Indenture, and Collineo, under Section 2(g) of the Collateral Administration Agreement, are also obligated to ensure the accuracy of the Monthly Reports and to resolve any discrepancies.

65.     Wells Fargo has breached its obligations under Section 10.06(a) of the Indenture and Section 2(b)(v) of the Collateral Administration Agreement by preparing Monthly Reports that were inaccurate and misleading, including by falsely stating that the CDO concentration limit requirement was satisfied. Wells Fargo and Collineo further breached their obligations under Section 10.06(a) of the Indenture and Section 2(g) of the Collateral Administration Agreement, respectively, by failing to ascertain the accuracy of the Monthly Report and resolve any discrepancies.

66.     The Indenture, Collateral Administration Agreement and Asset Management Agreement restrict Wells Fargo and Collineo from being indemnified for expense incurred as a result of acts or omissions constituting negligence, gross negligence or reckless disregard for their duties. Amounts disseminated by Wells Fargo to itself or Collineo for indemnification of expenses incurred in connection with their defense of the claims asserted herein are in breach of the Indenture, Collateral Administration Agreement and/or Asset Management Agreement.

67.     HOE I and EAA have fulfilled each and every one of their material contractual obligations under the Indenture, Collateral Administration Agreement and Asset Management Agreement.

68.     HOE I and EAA have suffered financial harm as a result of Wells Fargo's and Collineo's breaches and are entitled to damages in an amount to be determined at trial.

## COUNT II: DECLARATORY JUDGMENT
## (AGAINST WELLS FARGO AND COLLINEO)

69.     Plaintiffs repeat and reallege the foregoing allegations as though they were fully set forth here.

70.     As described above, Wells Fargo, as trustee and collateral administrator, and Collineo, as asset manager, have engaged in multiple flagrant breaches of the governing contracts, including Sections 12.02, 10.02(f) and 10.06(a) of the Indenture, Sections 2(b)(v), 2(e)(xxiii) and 2(g) of the Collateral Administration Agreement and Sections 2.01(c) and 2.03(f) of the Asset Management Agreement, by causing HOE I to purchase CDO securities in breach of the Eligibility Criteria and failing to ensure the accuracy of the Monthly Reports.

71.     In committing these breaches, Wells Fargo and Collineo acted negligently, grossly negligently and in reckless disregard for their obligations to HOE I under the Indenture, Collateral Administration Agreement and Asset Management Agreement.

72.     As a result, Wells Fargo and Collineo are not entitled to indemnification under Section 6.07 of the Indenture, Section 4 of the Collateral Administration Agreement, or Section 5.15 of the Asset Management Agreement for expenses incurred in connection with defending the claims in this action or otherwise in connection with the breaches alleged herein.

73.     An actual and justiciable controversy exists between Plaintiffs and each of Wells Fargo and Collineo in respect of their entitlement to indemnification.

74.     Plaintiffs therefore seek a declaration pursuant to 28 U.S.C. § 2201(a) that neither Wells Fargo nor Collineo is entitled to indemnification for any expenses incurred in defense of this action or otherwise in connection with the breaches alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants as follows:

A.     Awarding compensatory damages, in an amount to be determined at trial;

B.     Declaring that neither defendant is entitled to indemnification for expenses incurred in defense of this action or otherwise in connection with the breaches alleged herein;

C.     Awarding the costs of this action, including attorney's fees; and

D.     Awarding such other and further relief, in law and equity, as this Court deems just and proper.

Dated:   New York, New York
         January 23, 2013

Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By: _____
       Jonathan E. Pickhardt
       J. Toji Calabro (*admission pending*)

51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

jonpickhardt@quinnemanuel.com
tojicalabro@quinnemanuel.com

*Attorneys for Plaintiffs House of Europe
Funding I Ltd and Erste
Abwicklungsanstalt*