# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

—————————————

No. 13 Civ. 519 (RJS)

—————————————

HOUSE OF EUROPE FUNDING I, LTD., *et uno*,

Plaintiffs,

VERSUS

WELLS FARGO BANK, N.A., *et uno*,

Defendants.

—————————————

MEMORANDUM AND ORDER
March 31, 2014

—————————————

RICHARD J. SULLIVAN, District Judge:

Plaintiffs House of Europe I, Ltd. ("HOE I") and Erste Abwicklungsanstalt ("EAA") bring this action against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Collineo Asset Management GMBH ("Collineo") for breach of contract and declaratory judgment. Now before the Court are Defendants' motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons set forth below, Defendants' motions are granted in part and denied in part. Specifically, the Court will dismiss: (1) Plaintiffs' claims against Wells Fargo arising out of its preparation of Monthly Reports, (2) EAA's claim for breach of contract, (3) Plaintiffs' claims based on the Event of Default resulting from Wells Fargo's allegedly improper payment of interest on Class A notes, (4) HOE I's claims against Collineo for breaches of the Collateral Administration Agreement, and (5) EAA's claim against Collineo for declaratory judgment. Additionally, the Court will permit HOE I to amend the Complaint to assert a breach of contract claim against Wells Fargo for failure to bring suit against Collineo.

## I. BACKGROUND

### A. Facts

This case arises out of investment losses that were allegedly sustained by HOE I and

its senior noteholder EAA. HOE I, a special purpose vehicle incorporated in the Cayman Islands, is an issuer of collateralized debt obligations ("CDOs" or "CDO securities").[1] EAA is a German public agency that owns 100 percent of the most senior class of notes issued by HOE I. (Compl. ¶¶ 12–13, 26.)

A CDO issuer is an investment vehicle that bundles a variety of revenue-generating assets (the "collateral" or "underlying assets") and then sells pieces of the expected revenue to investors in the form of debt and equity securities (the CDO securities). (Compl. ¶ 20.) Generally, a sponsoring bank will create and structure a CDO transaction. HOE I was structured in 2003 and restructured in 2005 by WestLB AG, a German bank. (Id.)

As a special purpose vehicle, HOE I has no employees of its own and acts exclusively through third-party agents. (Compl. ¶¶ 2–3.) Here, HOE I contracted with Wells Fargo, an American bank, and Collineo, a German financial services corporation, to manage its operations. (Id. ¶¶ 14–15.) The relationships between HOE I, Wells Fargo, and Collineo are set forth in three contracts, all dated June 10, 2005 (the "Transaction Documents"): (1) the Amended and Restated Indenture (the "Indenture"), (2) the Collateral Administration Agreement (the "CAA"), and (3) the Asset Management Agreement

(the "AMA").[2] The Indenture sets forth the obligations between HOE I (as "Issuer"), House of Europe Funding LLC (as "Co-Issuer"), and Wells Fargo (as "Trustee"). The CAA sets forth the obligations between HOE I (as "Issuer"), Collineo (as "Asset Manager"), and Wells Fargo (as "Collateral Administrator"). The AMA sets forth the obligations between HOE I (as "Issuer") and Collineo (as "Asset Manager"). (Id. ¶¶ 60–74.) Each of the Transaction Documents contains a choice-of-law provision selecting New York law. (Indenture § 14.10; CAA § 11; AMA § 5.06.)

The success of CDO securities depends on the performance of the underlying assets, and thus the selection of underlying assets is typically governed by various restrictions set by the CDO issuer. Here, section 12.02 of the Indenture sets forth a number of "Eligibility Criteria" to be followed in the selection of underlying assets. (Compl. ¶¶ 27–29.) One such criterion ("the CDO Limit") is that no more than 15 percent of the "Maximum Investment Amount" of underlying assets can consist of other CDO securities. (Indenture § 12.02(28).) The Indenture includes this particular restriction because it is highly risky for CDO securities to invest in other CDO securities. (Compl. ¶ 30.)

The Complaint alleges that multiple provisions in the Transaction Documents obligate Wells Fargo, as Trustee and Collateral Administrator, and Collineo, as Asset Manager, to avoid selecting or investing in underlying assets when doing so would breach any of the Eligibility Criteria, including the CDO Limit. (Compl. ¶¶ 32–41.) According to the Complaint, on at least six separate occasions between April 2006

---

[1] The facts are taken from the Complaint. (Doc. No. 1.) In deciding the instant motions, the Court has also considered memoranda of law by Wells Fargo (Doc. No. 21 ("WF Mem.")) and Collineo (Doc. No. 17 ("Collineo Mem.")), Plaintiffs' joint opposition (Doc. No. 31 ("Opp.")), the replies by Wells Fargo (Doc. No. 36 ("WF Rep.")) and Collineo (Doc. No. 34 ("Collineo Rep.")), and the affidavits and documents submitted in support of the parties' memoranda. (Doc. Nos. 19, 20, 22, 23, 32, 33.)

[2] Copies of all three contracts are attached as exhibits to the Complaint.

and July 2007, Defendants invested in assets ("Disputed Assets") that brought the percentage of CDO securities above the CDO Limit. (*Id*. ¶¶ 50–51.) Most of the Disputed Assets have already defaulted, causing losses of approximately $143 million and the remainder are expected to default soon, causing additional losses of approximately $20 million. (*Id.* ¶¶ 10, 51.)

The Complaint further alleges that Defendants breached the Transaction Documents with respect to "Monthly Reports" that Wells Fargo, as Collateral Administrator, was required to issue in consultation with Collineo. (Compl. ¶¶ 8, 42–45.) A number of Monthly Reports erroneously reported that the percentage of CDO securities fell under the CDO Limit when, in fact, the CDO Limit had been exceeded. (*Id.* ¶¶ 52–54.) Specifically, these Monthly Reports separated CDO securities into two categories, "CBO/CDO/CLO" and "CDO Structured Product," and counted only the first category toward the CDO Limit, even though the second category also should have been included. (*Id.* ¶ 53.) The Complaint further alleges that some Monthly Reports entirely omitted CDO securities under either category. (*Id.*)

The Complaint further alleges that Wells Fargo caused an "Event of Default" under the Indenture when it paid interest on Class A notes without first making required "Hedge Payments" to third parties. (Compl. at 18–19.)[3]

Finally, the Complaint alleges that on March 15, 2011, EAA demanded that Wells Fargo bring appropriate legal action on behalf of HOE I to recover losses sustained

as a result of investment in the Disputed Assets. (Compl. ¶ 58.) Wells Fargo refused to do so, even though EAA offered to indemnify it for any legal costs it incurred as a result of instituting such action. (*Id.*)

## B.  Procedural History

Plaintiffs filed the Complaint on January 23, 2013. On April 24, 2013, Wells Fargo and Collineo filed separate motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 16, 18.) The motions were fully submitted on July 17, 2013. The Court held oral argument on October 31, 2013. (Doc. No. 42.) Wells Fargo filed a supplemental submission on December 20, 2013. (Doc. No. 46.)

## II.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not

---

[3] This allegation appears on pages 18 and 19 of the Complaint in an unnumbered paragraph between paragraphs 55 and 56.

nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.

On a motion to dismiss, the Court may consider, in addition to the complaint itself, "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations and quotation marks omitted); *see also Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## III. DISCUSSION

### A. Wells Fargo's Motion to Dismiss

Wells Fargo argues that the Complaint should be dismissed on the following grounds:  (1) neither the Indenture nor the CAA required it to verify that investing in underlying assets selected by Collineo would comply with the Eligibility Criteria or to report in the Monthly Reports whether the CDO Limit had been exceeded (WF Mem. at 9–13); (2) Plaintiffs failed to plead facts showing that any breach of the CAA was the result of gross negligence, as required for liability under that contract (*id.* at 13–14); (3) EAA's claims must be dismissed because, among other things, EAA failed to allege that it suffered any injury (*id.* at 15–16)[4]; (4) claims brought by HOE I must be dismissed because HOE I lacks standing and because HOE I had unclean hands (*id.* at

---

[4] Wells Fargo seeks dismissal of EAA's claims on a number of other grounds, which the Court need not consider in relation to EAA's breach of contract claim because the Court dismisses that claim for failure to adequately plead damages. (WF Mem. at 16–21.)  The Court considers these arguments in connection with EAA's declaratory judgment claim at Part III.A.5.

21–25); (5) Plaintiffs' claims for declaratory judgment must be dismissed on various grounds (*id.* at 14–19); and (6) any claim based on the Event of Default resulting from Wells Fargo's allegedly improper payment of interest on Class A notes must be dismissed because Plaintiffs failed to allege any associated injury (*id.* at 10–11).

### 1. Wells Fargo's Contractual Obligations

#### a. Eligibility Criteria

Wells Fargo argues that, as Asset Manager, Collineo was the party responsible for selecting underlying assets and that Wells Fargo had no contractual obligation, under the Indenture or the CAA, to consider whether any of the underlying assets proposed by Collineo would violate the Eligibility Criteria. (WF Mem. at 9–12.)  As discussed below, the Court finds that while Wells Fargo had no contractual duty to second-guess Collineo's representations about the characteristics of a proposed underlying asset, it did have duties (1) to refrain from investing in a proposed underlying asset if it determined, based on information provided by Collineo, that doing so would breach the Eligibility Criteria and (2) to calculate whether investing in underlying assets selected by Collineo would breach the CDO Limit.  The Court also finds that the Complaint adequately pleads facts suggesting that Wells Fargo breached one or both of these duties.

The Indenture and CAA are clear that primary responsibility for selecting assets in compliance with the Eligibility Criteria lay with Collineo, not Wells Fargo.  Section 12.02 of the Indenture provides that "[s]ubject to satisfaction of the [Eligibility Criteria] set forth below, during the Reinvestment Period, the Asset Manager may instruct the Indenture Trustee to invest . . . in Underlying Assets *selected by the*

*Asset Manager*." (Indenture § 12.02 (emphasis added).) Similarly, section 10.02(f) provides that "the Asset Manager on behalf of the Issuer may by Issuer Order *direct* the Indenture Trustee to, and upon receipt of such Issuer Order the Indenture Trustee *shall*, reinvest Principal Proceeds in Underlying Assets selected by the Asset Manager as permitted under and in accordance with [the Eligibility Criteria]." (*Id.* § 10.02(f) (emphases added).)

Furthermore, under both the Indenture and the CAA, Wells Fargo was permitted to rely broadly on information provided in "certifications" furnished to it by Collineo. Under section 12.03(b) of the Indenture, Collineo was required to certify to Wells Fargo that investing in the underlying assets it selected would not violate the Eligibility Criteria, and under various provisions in Article VI of the Indenture, Wells Fargo was not required to second-guess representations made in such certifications. (*See, e.g.*, Indenture § 6.01(a)(ii) ("[I]n the absence of bad faith on its part, the Indenture Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates . . . furnished to [it]."); *id.* § 6.03(f) ("Indenture Trustee shall not be bound to make any investigation into the facts or matters stated in any . . . certificate."); *id.* § 6.03(i) ("[Nothing in the Indenture] shall be construed to impose an obligation on the part of the Indenture Trustee to recalculate, evaluate[,] or verify any report, certificate[,] or information received from the . . . Asset Manager.").)[5] Similarly, section 2(a) of the

CAA provides that "Wells Fargo shall not be deemed to assume the obligations of . . . Collineo under the [Asset] Management Agreement." (CAA § 2(a).)

These provisions suggest a role for Wells Fargo that was essentially administrative and do not support Plaintiffs' assertion that Wells Fargo was required to investigate the accuracy of Collineo's representations about the characteristics of a proposed underlying asset, including its classification as a CDO security or something else. (*See* Opp. at 15.) Plaintiffs cannot point to a single contractual provision that requires Wells Fargo, as either Trustee or Collateral Administrator, to shadow Collineo and determine for itself whether a proposed underlying asset is a CDO security.

That said, Wells Fargo's contention that it was under *no* duty to avoid investments in violation of the Eligibility Criteria is overstated. Indeed, the same provisions that Wells Fargo relies on to show that Collineo was primarily responsible for ensuring compliance with the Eligibility Criteria also establish that Wells Fargo had a contractual duty not to invest in underlying assets if it determined, based on information provided by Collineo or its own calculations, that doing so would breach the Eligibility Criteria. Section 12.02 of the Indenture provides that "Uninvested Interest Proceeds and Principal Proceeds may be *invested in* an Underlying Asset if, after such investment, the following criteria (the 'Eligibility Criteria') are satisfied or . . . not made worse," and it is undisputed that the

---

[5] Plaintiffs contend that section 6.01(a)(ii), which provides that "Indenture Trustee shall be under a duty to examine [certifications] to determine whether or not they substantially conform to the requirements of this Indenture," establishes a contractual duty to double-check the truth of matters stated in certifications. (Opp. at 17.) This misreads section 6.01(a)(ii). The language quoted by Plaintiffs

imposes an obligation to check certifications for compliance with form requirements, not an obligation to check for accuracy. (Indenture § 6.01(a)(ii) ("If a corrected *form* shall not have been delivered to the Indenture Trustee within fifteen (15) days . . .") (emphasis added).)

only party with authority to actually make an investment was Wells Fargo. (Indenture § 12.02 (emphasis added); *see also id.* ("[T]he Asset Manager may instruct *the Indenture Trustee to invest.*" (emphasis added)).) Similarly, section 12.03(b) of the Indenture contains a requirement that Collineo's certifications set forth "calculations in reasonable detail necessary to determine . . . compliance [with the Eligibility Criteria]." (*Id.* § 12.03(b).) Since Collineo's certifications were furnished to Wells Fargo, the clear implication is that Wells Fargo would rely on the certifications to determine compliance with the Eligibility Criteria.

Further, it is undisputed that, at the very least, Wells Fargo had a contractual duty to calculate whether investing in a proposed underlying asset would cause a breach of the CDO Limit. Section 2(e) of the CAA explicitly provides:

In reference to Section 12.02 of the Indenture, Wells Fargo shall perform the following functions in connection with . . . any obligation or security proposed to be included in the Collateral as a Pledged Underlying Asset:

. . .

(xxiii) If such Underlying Asset is a CDO Security, determine if the Aggregate Principal Amount of all such Underlying Assets . . . does not exceed [15%] of Maximum Investment Amount.

(CAA § 2(e).) As Plaintiffs point out, the duty to calculate in section 2(e) makes little sense unless section 12.02 of the Indenture is read to impose a duty on Wells Fargo to refrain from investing in an underlying asset that it determined would violate the

Eligibility Criteria. (Opp. at 14.) Indeed, section 2(e) of the CAA specifically references section 12.02 of the Indenture.

Wells Fargo cites a number of provisions in Article VI of the Indenture that it claims broadly immunized it from liability for its investments in the Disputed Assets. Specifically, Wells Fargo argues that sections 6.01(a)(ii), 6.03(a), 6.03(f), and 6.03(i) permitted it to rely, conclusively, on Collineo's *certifications* that proposed underlying assets complied with the Eligibility Criteria and, relatedly, that sections 6.01(c)(iii) and (v) immunized it from liability for investments made at the *direction* of Collineo. (WF Mem. at 4, 7, 9; WF Rep. at 2.) For the reasons set forth below, the Court finds that Wells Fargo overstates the scope of these contractual safe harbors. The Court considers each provision in turn, albeit in a different order than presented above.

Section 6.01(a)(ii) provides that "in the absence of bad faith on its part, the Indenture Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates . . . furnished to [it]." (Indenture § 6.01(a)(ii).) Thus, by its own terms, section 6.01(a)(ii) does *not* permit Wells Fargo to rely on Collineo's certification that a proposed underlying asset complies with the Eligibility Criteria where such reliance would be in bad faith. There are two scenarios in which it would clearly be bad faith for Wells Fargo to rely on Collineo's certification that a proposed underlying asset complies with the Eligibility Criteria. First, it might be clear from the face of a certification that Collineo's representation of compliance cannot be true. For example, if Collineo certified to Wells Fargo that a proposed underlying asset was a CDO security, that it would constitute 80 percent of the overall

portfolio, but that investing in the asset would not violate the Eligibility Criteria, it would be bad faith for Wells Fargo to rely conclusively on the third representation, despite its clear conflict with the first two. Second, Wells Fargo could not in good faith rely on a certification of Eligibility Criteria compliance if, based on its calculations under section 2(e) of the CAA, it knew that a proposed underlying asset would cause the aggregate amount of CDO securities to exceed the CDO Limit. For example, if Collineo proposed on five successive days to invest in five different CDO securities, each of which it certified would constitute 10 percent of the overall portfolio, but represented that none of these investments would violate the Eligibility Criteria, it would be bad faith for Wells Fargo to rely on the certifications of compliance and invest in the securities.

Section 6.01(c)(iii) contains a similar limitation. It provides that "the Indenture Trustee shall not be liable with respect to any action taken or omitted to be taken by it *in good faith* in accordance with the direction of . . . [the] Asset Manager in accordance with this Indenture." (Indenture § 6.01(c)(iii).) Thus, for reasons similar to those just discussed, section 6.01(c)(iii) cannot apply to a scenario in which Wells Fargo knew – based on information provided in a certification or its own calculations under section 2(e) of the CAA – that following a particular directive from Collineo would violate the Eligibility Criteria.

Sections 6.03(a) and 6.03(f) appear under the sub-heading "Certain Rights of Indenture Trustee." Section 6.03(a) provides that "the Indenture Trustee may rely and shall be protected in acting or refraining from acting upon any . . . certificate . . . reasonably believed by it to be genuine and to have been signed or

presented by the proper party or parties." (Indenture § 6.03(a).) Section 6.03(f) provides that "the Indenture Trustee shall not be bound to make any investigation into the facts or matters stated in any . . . certificate . . . , but the Indenture Trustee, in its discretion, may and, [under certain circumstances], shall make further inquiry or investigation into such facts or matters as it may see fit or as it shall be directed." (*Id.* § 6.03(f).) It is clear from the language and context of these provisions that neither creates a safe harbor independent of the one described in 6.01(a)(ii). Section 6.03(a) simply protects Wells Fargo from liability for reliance on forged or improperly issued certificates. Likewise, the reliance language in 6.03(f) is simply a prelude to that provision's grant of investigatory authority to Wells Fargo. To the extent that these provisions echo the language of 6.01(a)(ii), they implicitly import 6.01(a)(ii)'s bad faith carve-out.

Section 6.03(i) provides that Wells Fargo has no duty to "recalculate, evaluate[,] or verify any . . . certificate . . . received from the . . . Asset Manager []unless and except to the extent otherwise expressly set forth herein." (Indenture § 6.03(i).) This language is entirely consistent with the Court's view of Wells Fargo's contractual obligations, namely, that Wells Fargo had no duty to second-guess any information provided by Collineo in a certificate, but could not make an investment simply because Collineo represented that doing so would not violate the Eligibility Criteria. This language is also consistent with section 2(e) of the CAA, which creates an express obligation to perform calculations in relation to the CDO Limit.

Finally, section 6.01(c)(v) provides that "the Indenture Trustee shall not be liable to the Noteholders for any action taken or omitted by it at the direction of . . . the Asset

Manager . . . under circumstances in which such direction is required or permitted by the terms of this Indenture." (Indenture § 6.01(c)(v).) By its own terms, section 6.01(c)(v)'s safe harbor is limited by duties imposed by other Indenture provisions. As discussed, section 12.02 imposes on Wells Fargo a duty not to invest where doing so would violate the Eligibility Criteria. Thus, section 6.01(c)(v)'s safe harbor does not permit Wells Fargo to blindly follow Collineo's investment instructions where doing so would clearly violate the Eligibility Criteria.

Despite the numerous and overlapping provisions, the contractual scheme set forth in the Indenture and CAA is not complicated. Wells Fargo's duties may be summarized as follows: Under section 2(e) of the CAA, Wells Fargo had to calculate, for each proposed underlying asset, whether investing in that underlying asset would result in a violation of the CDO Limit. If, on the basis of that calculation, it determined that the investment would result in a violation of the CDO Limit, then under section 12.02 of the Indenture, it was required *not* to make the investment. In performing these duties, however, Wells Fargo was entitled, under various subsections of Article VI of the Indenture, to rely on the truth of any certifications provided by Collineo about the characteristics of the proposed underlying asset. Hence, if Collineo certified that a particular underlying asset was not a CDO security, Wells Fargo was entitled to rely conclusively on that certification. However, Wells Fargo was *not* entitled to rely on Collineo's representations that a proposed asset complied with the Eligibility Criteria if, based on its own calculations under 2(e) or based on the face of the certifications themselves, those representations could not be true.

Given this contractual framework, the Court must reject Wells Fargo's argument that the Complaint fails to allege a contractual breach. The Complaint alleges that, on at least six occasions, Wells Fargo invested in CDO securities when doing so caused the aggregate amount of such securities to exceed 15 percent (Compl. ¶¶ 50–51). The Complaint further alleges that Wells Fargo, along with Collineo, sought to conceal these improper investments by hiding their true nature in the Monthly Reports. (*Id.* ¶ 52.) Rather than reporting these underlying assets as "CDO Securities," which is the category defined in the Indenture and relevant to the CDO Limit, Wells Fargo and Collineo allegedly concocted two categories, "CBO/CDO/CLO" and "CDO Structured Product," neither of which is defined or mentioned in any of the Transaction Documents, and counted only the former toward the CDO Limit. (*Id.* ¶ 53.) Moreover, according to the Complaint, Wells Fargo and Collineo sometimes concealed investments in CDO securities by not reporting them at all under either of the two made-up categories. (*Id.*) For example, the Complaint alleges that in the April 2006 Monthly Report, Wells Fargo not only failed to count €103 million worth of "CDO Structured Product" toward the CDO limit, it also failed to report €30 million worth of CDO securities under either of the two categories. (*Id.* ¶ 54.) Finally, the Complaint alleges that when EAA asked Wells Fargo to institute legal proceedings against Collineo to recover losses sustained as a result of investing in the Disputed Assets, Wells Fargo refused, despite EAA's offer to indemnify Wells Fargo for its legal costs as Trustee. (*Id.* ¶¶ 57–58.)

The Court concludes that these allegations, taken together, are adequate to state a breach of contract claim against Wells Fargo under the contractual

framework just discussed.  On a motion to dismiss, the Court must credit Plaintiffs' allegation that the Disputed Assets were CDO securities and that their acquisition brought the total amount of such securities over the CDO Limit on at least six separate occasions.  The allegation that Wells Fargo, in tandem with Collineo, attempted to hide the nature of these investments by (1) separating them into two fabricated categories, (2) counting only assets in one category toward the CDO Limit, and (3) omitting some CDO securities from either category permits the reasonable inference that Wells Fargo breached section 12.02 of the Indenture by investing in the Disputed Assets *knowing* that doing so would violate the Eligibility Criteria.  Alternatively, these allegations support the inference that Wells Fargo failed to perform its calculations under section 2(e) of the CAA, since if Wells Fargo had properly performed these calculations, it would have counted all CDO securities – not just those categorized as "CBO/CDO/CLO" – toward the CDO Limit.

Finally, the allegation that Wells Fargo refused to bring suit on behalf of EAA, despite being offered indemnification for its legal costs, supports the inference that it did not innocently rely on Collineo, but knew that its investments at Collineo's behest were improper.

Of course, Wells Fargo might have a powerful argument on a motion for summary judgment that it breached neither section 12.02 nor section 2(e) because it invested in the Disputed Assets in good faith reliance on inaccurate certifications supplied by Collineo.  For example, if discovery reveals that Collineo certified to Wells Fargo that assets classified as "CDO Structured Product" were not CDO securities and should be omitted from the section 2(e) calculation, Wells Fargo might

successfully argue that it was entitled, under Article VI of the Indenture, to rely on those certifications.  Such an argument is premature at the motion to dismiss phase, however, particularly since the Complaint is entirely silent about whether Wells Fargo in fact received certifications from Collineo, the contents of such certifications, and whether Wells Fargo relied on such certifications.  Because the success of this argument turns on factual issues beyond the pleadings, it is not a basis for dismissal under Rule 12(b)(6).

b. Monthly Reports

Wells Fargo argues that any inaccurate information it provided on the Monthly Reports is not independently actionable because it had no duty, under the Indenture or the CAA, to report information relating to the CDO Limit and that, even if it had such a duty, it was entitled to rely on information provided by Collineo.  (WF Mem. at 9–10, 12–13.)  The Court agrees that Wells Fargo had no duty to report whether the CDO Limit had been breached.[6]

It is clear that Wells Fargo, as Trustee, had no obligation to prepare the Monthly Reports.   (*See*   Indenture   § 10.06(a)

---

[6] Although the Court finds that Wells Fargo had no contractual duty to report whether the CDO Limit had been exceeded, the allegations that Wells Fargo falsely reported this information is relevant in two respects.  First, as already discussed, these allegations support the inference that Wells Fargo either invested in the Disputed Assets knowing that doing so violated the CDO Limit or failed to include the CDO securities classified as "CDO Structured Product" in its section 2(e) calculation.   Second, as discussed more fully below, these allegations support the inference that Wells Fargo acted with at least gross negligence in breaching its duties under the CAA. Thus, while the allegations relating to the Monthly Reports do not themselves state a cause of action against Wells Fargo, they shed light on Plaintiffs' other contract claims.

(providing that Monthly Reports had to be delivered *to* Wells Fargo, as Trustee).) Wells Fargo was required, as Trustee, to examine the Monthly Reports and to report any discrepancies between the Monthly Reports and the collateral database that it was obligated to maintain. (*Id.*) However, there is no allegation in the Complaint that Wells Fargo failed to perform this function. The Complaint alleges only breaches arising out of the *preparation* of the Monthly Reports (*see* Compl. ¶¶ 52–54); it alleges no breaches arising out of any failure by Wells Fargo to compare the Monthly Reports to the collateral database.

Wells Fargo did have an obligation, as Collateral Administrator, to prepare and issue the Monthly Reports. (Indenture § 10.06(a); CAA § 2(b)(v).) There is, however, no contractual provision requiring Wells Fargo to report whether the CDO Limit had been exceeded. Plaintiffs cite sections 2(c)(xxii) and 2(c)(xxviii) of the CAA as the sources of this supposed duty. Neither provision creates such a duty. Section 2(c)(xxii) requires the Monthly Report to "[i]dentify (based exclusively on the information provided by Collineo) the Aggregate Principal Amount of all CDO Securities sold or placed by [the] *same lead underwriter, lead manager*[,] *or lead placement agent* and the permitted Aggregate Principal Amount thereof [under the Eligibility Criteria]." (CAA § 2(c)(xxii).) Although the purpose for this provision is not entirely clear, it certainly does not require Wells Fargo to report the *total* amount of CDO securities or the permitted amount thereof. Similarly, section 2(c)(xxviii), which requires Wells Fargo to report the "respective percentages of the Aggregate Principal Amount of all Underlying Assets . . . for each aggregate amount referred to in [sections 2(c)(viii) through (xxii)]," does not mandate a report of the percentage of *total* CDO securities.

Because Plaintiffs have not cited any contractual provisions requiring Wells Fargo to report the total amount of CDO securities and whether this amount complies with the CDO Limit, the Court will dismiss claims arising out of Wells Fargo's preparation of the Monthly Reports.

### 2.  Gross Negligence

Wells Fargo argues that Plaintiffs' claim against it for breaches of the CAA must be dismissed because, under section 4(a) of that contract, Wells Fargo is not liable for any breach unless that breach constituted at least gross negligence. (CAA § 4(a).) Under New York law, gross negligence is "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs.*, 595 N.Y.S.2d 381, 383 (1993) (citations omitted). Whether a breach constituted gross negligence is an issue of fact that generally should not be addressed on a motion to dismiss. *See, e.g.*, *Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 481 (E.D.N.Y. 2010); *Robin Bay Assocs., LLC v. Merrill Lynch & Co.*, No. 07 Civ. 376 (JMB), 2008 WL 2275902, at *6 (S.D.N.Y. June 3, 2008).

As already discussed, the Complaint alleges that in at least six separate transactions, Wells Fargo invested in CDO securities in breach of the Eligibility Criteria and, furthermore, that Wells Fargo concealed these improper investments by reporting them under two fabricated categories, neither of which is mentioned in the Transaction Documents, and counting only one of the categories toward the CDO Limit. (Compl. ¶¶ 50–51, 53–54.) The Complaint further alleges that Wells Fargo left certain CDO securities out of either category. (*Id.* ¶¶ 53–54.) At this stage of the proceedings, these allegations, taken as true, support the inference that Wells Fargo

acted with gross negligence because they suggest that Wells Fargo *knew* that it should not have invested in the Disputed Assets and invented this deceptive reporting scheme to conceal the true nature of these investments. Furthermore, the allegation that Wells Fargo refused to institute action against Collineo, despite EAA's offer to indemnify its legal costs for doing so, further supports the inference that Wells Fargo engaged in conduct constituting gross negligence.

### 3.  EAA's Lack of Injury

Wells Fargo argues that EAA's breach of contract claim must be dismissed because it has failed to allege any injury from the alleged breaches. (WF Mem. at 15–16.) The Court agrees and finds that EAA has failed to state a claim for breach of contract.

To state a claim for breach of contract under New York law, "a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004). Factual allegations showing damages are essential: "In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint." *Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.*, 651 N.Y.S.2d 490, 492 (App. Div. 1996) (citations and quotation marks omitted). Accordingly, "[w]here a party has failed to come forward with evidence sufficient to demonstrate damages flowing from the breach alleged and relies, instead, on wholly speculative theories of damages, dismissal of the breach of contract claim is in order." *Id.*

Here, Plaintiffs have failed to plead any facts showing that EAA suffered any damages from the alleged breaches. The Complaint alleges that, as a result of

Defendants' breaches, the underlying assets diminished in value by approximately $143 million and will eventually diminish in value by an additional $20 million. (Compl. ¶ 10.) However, although the Complaint asserts, in conclusory fashion, that this loss caused "financial harm" to both HOE I and EAA, it alleges no *facts* showing that EAA bore any of the loss. (*See id.* ¶¶ 10, 49, 68.) HOE I – not EAA – is the owner of the underlying assets. (*Id.* ¶¶ 2, 20.) While the performance of the underlying assets affects HOE I's ability to pay investors (*id.* ¶ 20), the Complaint does not allege that the loss affected HOE I's ability to pay EAA, which holds the most senior class of notes (*id.* ¶ 26).

Plaintiffs argue that EAA can suffer financial harm even in the absence of a default on payments because a decrease in the value of underlying assets securing EAA's notes affects the resale value of those notes. (Opp. at 28–29 (citing *Argonaut P'ship, LP v. Bankers Tr. Co.*, No. 96 Civ. 1970 (MBM), 1997 WL 45521 (S.D.N.Y. Feb. 4, 1997)).) It is true that an investor can sustain an injury, even in the absence of a default on payments, if the market value of the security has decreased. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 166 (2d Cir. 2012) ("[B]asic securities valuation principles . . . belie the proposition that a fixed income investor must miss an interest payment before his securities can be said to have declined in 'value.'"). This, however, does not save EAA's claim, since the Complaint contains no allegation that the notes held by EAA – the most senior and secure of the notes issued by HOE I – ever decreased in market value as a result of the alleged conduct. The Court finds that the Complaint fails to adequately allege any damages by EAA and dismisses EAA's breach of contract claim.

4. HOE I's Standing and Unclean Hands

Wells Fargo argues that any claims by HOE I should be dismissed because HOE I lacks standing to sue and because it had unclean hands.  Neither argument has merit.

Wells Fargo asserts that HOE I lacks standing to sue because, as the Issuer, it has sustained no injury from the alleged diminution in the value of the underlying assets.  (WF Mem. at 22.)  As a New York court has observed, a CDO issuer like HOE I owns the underlying assets and is therefore injured by actions that adversely affect the underlying assets.  *Hildene Capital Mgmt., LLC v. Bank of N.Y. Mellon*, 963 N.Y.S.2d 38, 40 (App. Div. 2013).  Wells Fargo cites no authority for its contention that an entity that holds assets strictly for the benefit of investors cannot suffer an actual injury.  By that logic, no corporate entity would ever have standing to sue based on injury to corporate assets, since corporate entities all hold assets for the ultimate benefit of investors.  The Court therefore finds no grounds for dismissal on this basis.

Wells Fargo's unclean hands, or *in pari delicto*, argument is premature.  Wells Fargo argues that HOE I had unclean hands because HOE I prepared "Officer's Certificates" that reported false information and "Accountants' Reports" that failed to conform to the requirements of the Indenture.  (WF Mem. at 24–25.)  The Court need not consider this argument since it goes well beyond the Complaint, which does not attach, reference, or rely upon any Officer's Certificates or Accountants' Reports.  *See Sira*, 380 F.3d at 67.

5. Declaratory Judgment Claims

The Complaint asserts a cause of action for a declaratory judgment that, under the indemnification clauses of the Transaction Documents, Defendants are not entitled to indemnification for their costs in defending this action.  (Compl. ¶¶ 69–74 (citing Indenture § 6.07; CAA § 4; AMA § 5.15).)  Wells Fargo argues that if Plaintiffs' breach of contract claims are dismissed, their declaratory judgment claims should be dismissed as well, since the issues raised by the former encompass the latter.  (WF Mem. at 14–15.)

Because the Court denies Wells Fargo's motion to dismiss HOE I's breach of contract claim with respect to the Disputed Assets, the Court also denies Wells Fargo's motion to dismiss HOE I's declaratory judgment claim.  As discussed above, HOE I has alleged facts adequate to support an inference that Wells Fargo acted with gross negligence in breach of the Indenture and CAA.  Those same facts could also support a claim that Wells Fargo is not entitled to indemnification.  (*See* Indenture § 6.07 (excluding indemnification in situations where Wells Fargo acted with at least gross negligence); CAA § 4 (same).)

Although the Court has granted Wells Fargo's motion to dismiss EAA's breach of contract claim, this is not necessarily fatal to EAA's declaratory judgment claim.  As discussed, EAA's breach of contract claim is dismissed for failure to adequately plead that, as the senior noteholder, it suffered any financial injury from the diminution in the value of the Disputed Assets.  The lack of damages, however, is not fatal to EAA's declaratory judgment claim, which seeks a declaration that Defendants are not entitled to indemnification because they acted "negligently, grossly negligently[,] and in reckless disregard for their obligations . . . under the Indenture, Collateral Administration Agreement[,] and Asset Management Agreement."  (Compl. ¶ 71.)  Wells Fargo may, at some point, seek to recoup its legal fees in this action through

the indemnification clauses.  The question of whether it is entitled to do so is independent from the question of whether EAA can assert its own breach of contract claim.

Because EAA's declaratory judgment claim cannot be dismissed on the same grounds as its breach of contract claim, the Court must consider Wells Fargo's other arguments for why EAA cannot bring suit.[7]

First, Wells Fargo argues that EAA cannot sue on its notes because EAA acquired them after the time of the alleged breach.  (WF Mem. at 16–17.)  EAA acquired its notes from a predecessor-in-interest in 2009, after the acquisition of the Disputed Assets.  (*Id.*)[8]  Under New York General Obligations Law § 13-107, the transfer of a bond only transfers certain claims held by the transferor.  N.Y. G.O.L. § 13-107.  Wells Fargo argues that some of the claims held by EAA's predecessor were not transferred to EAA.  Without objecting to Wells Fargo's characterization of section 13-107, Plaintiffs argue that German law, not New York law, governs the transfer of claims.  (Opp. at 30–31.)

The Court need not address the choice-of-law issue because, even if New York law were applicable, section 13-107 would not bar EAA's declaratory judgment claim.  The thrust of EAA's declaratory judgment claim is that Defendants should not be permitted to seek indemnification for defending the present action.  That claim is based on EAA's present status as a noteholder and does not depend on the validity or scope of a claims transfer from its predecessor-in-interest.

Second, Wells Fargo argues that EAA cannot sue under the CAA because noteholders like EAA are not intended third-party beneficiaries of the CAA.  (WF Mem. at 17–18.)  It is well settled that, under New York law, a third party may sue under a contract only if it was intended as a third-party beneficiary.  *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005).  To determine whether a party is an intended third-party beneficiary, the court may "look at the surrounding circumstances as well as the agreement"; in other words, "[a party's status as a] third party beneficiary need not be expressly stated in the contract."  *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 573 (2d Cir. 1991).  Here, the Court has little trouble concluding that noteholders like EAA are intended third-party beneficiaries under the CAA.  The Indenture expressly provides that noteholders are intended beneficiaries (*see* Indenture Granting Clause), and the Indenture, CAA, and AMA – which were executed on the same day and concern the same transaction – must be read together.  *Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 233 (2d Cir. 1991) ("Under New York law, instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together.").  As Plaintiffs point out, the HOE I transaction was structured specifically to benefit noteholders.  (Opp. at 34.)  Accordingly, the Court rejects Wells Fargo's argument that noteholders like EAA are not intended third-party beneficiaries to the CAA.

Finally, Wells Fargo contends that it cannot be sued by EAA in its capacity as Collateral Administrator because EAA failed to comply with section 5.08 of the

---

[7] These arguments do not distinguish between EAA's breach of contract claim and declaratory judgment claim, so the Court presumes that they are directed toward both claims.

[8] Although the Complaint does not plead when EAA acquired its notes, this fact is not disputed by the parties and its truth is ultimately of no moment here.

Indenture – the so-called "no-action clause" – which prohibits suit by noteholders unless certain conditions are met. (WF at 18–19.) Wells Fargo argues that those conditions were not met here. (*Id.*)

The Court rejects this argument because, under established law, section 5.08 is unenforceable with respect to EAA's claims against Wells Fargo. As Wells Fargo recognizes, a no-action clause may not be construed to bar noteholder claims against an indenture trustee, since it would be absurd to require an indenture trustee to sue itself.[9] *Cruden v. Bank of New York*, 957 F.2d 961, 968 (2d Cir. 1992) ("The district court held that the 'no action' clause applied only to debenture holder suits against [the issuer], not the Indenture Trustee[]. . . . This construction of [the clause] obviously is correct, as it would be absurd to require the debenture holders to ask the Trustee to sue itself."); *see also Ellington Credit Fund, Ltd. v. Select Portfolio Serv., Inc.*, 837 F. Supp. 2d 162, 186 (S.D.N.Y. 2011). Wells Fargo argues, weakly, that the *Cruden* rule should not be extended to situations where "the same entity that serves as trustee also serves in another contractual capacity" and the noteholders seek to sue that entity in the other, non-trustee capacity. (WF Rep. at 9 n.10.) This is a distinction without a difference. The *Cruden* rule is premised on the futility of asking an entity to sue itself. 957 F.2d at 968. Wells Fargo cannot articulate, and the Court cannot fathom, why the absurdity of a self-suit would be diminished by the fact that the entity brings and resists the suit under different capacities. Because section 5.08 cannot be construed to cover noteholder suits against Wells Fargo, Wells Fargo's motion to

dismiss EAA's declaratory judgment claim on this ground must be denied.

Accordingly, for the reasons set forth above, the Court denies Wells Fargo's motion to dismiss the declaratory judgment claims by HOE I and EAA.

### 6. Event of Default

Wells Fargo correctly points out that the Complaint fails to allege any damages stemming from the Event of Default caused by Wells Fargo's allegedly improper payment of interest on the Class A notes. (WF Mem. at 10; *see* Compl. at 18–19.) In their opposition, Plaintiffs have clarified that the allegations concerning the Event of Default were not intended to state an additional claim, but simply to support Plaintiffs' allegations of systematic negligence. (Opp. at 21 n.6.) Accordingly, any claim the Complaint might raise on the basis of the Event of Default is dismissed.

### B. Collineo's Motion to Dismiss

Collineo's motion raises a number of grounds for dismissal that overlap with arguments made by Wells Fargo, including technical arguments challenging Plaintiffs' ability to sue and an argument based on an exculpatory clause, section 5.15 of the AMA. In light of the Court's dismissal of EAA's breach of contract claim and the Court's ruling that the Complaint adequately pleads gross negligence,[10] only three of

---

[9] In its papers, Wells Fargo explicitly states that it does not seek to dismiss EAA's claims against it as Indenture Trustee on this ground. (WF Mem. at 18 n.12; WF Rep. at 9.)

[10] Section 5.15 of the AMA is analogous to section 4(a) of the CAA and provides that Collineo is not liable for breaches of the AMA unless those breaches constitute "bad faith, willful misconduct[,] or gross negligence." (AMA § 5.15.) As discussed above, the Complaint's allegations that Wells Fargo and Collineo concocted bogus classifications for the CDO securities they invested in could, if true, support the inference that they knew that the investments were improper and therefore acted with at least gross negligence. Thus, Collineo's argument based on

14

Collineo's arguments need to be considered: (1) that HOE I's claims are subject to and time-barred under the German statute of limitations, (2) that HOE I lacks standing to sue because it assigned away its right to bring suit for claims arising under the CAA or AMA, and (3) that section 5.08 of the Indenture bars EAA's declaratory judgment claim against Collineo.

### 1. Statute of Limitations

Under the New York borrowing statute, section 202 of the New York Civil Practice Law and Rules ("CPLR"), a cause of action brought by a non-resident of New York must comply with both the New York statute of limitations and the statute of limitations of the place where the cause of action accrued.   N.Y. C.P.L.R.   § 202. Collineo argues that the place where HOE I's claims accrued is Germany, where HOE I's investors reside, and that HOE I's claims are therefore subject to the three-year German statute of limitations.  By contrast, Plaintiffs contend that HOE I's claims accrued in the Cayman Islands, where HOE I is incorporated and maintains its business records, and that HOE I's claims are timely under the six-year Cayman Islands statute of limitations.[11]

Under New York law, in a suit alleging an economic injury, "the cause of action typically accrues 'where the plaintiff resides and sustains the economic impact of the

loss.'"   *Portfolio Recovery Assocs., LLC v. King*, 901 N.Y.S.2d 575, 577 (2010) (quoting *Global Fin. Corp. v. Triarc Corp.*, 693 N.Y.S.2d 479, 482 (1999)).  In the case of corporations, "the place of residence for the purposes of CPLR § 202 is traditionally the   state   of   incorporation   or   the corporation's principal place of business." *Baena v. Woori Bank*, No. 05 Civ. 7018 (PKC), 2006 WL 2935752, at *6 (S.D.N.Y. Oct. 11, 2006) (citing cases); *see also Global Fin. Corp.*, 693 N.Y.S.2d at 482. Here, HOE I is incorporated in the Cayman Islands and maintains business records at its Cayman Islands office.   (Compl. ¶ 12; Indenture   § 7.03(a).)    There   are   no allegations in the Complaint suggesting that HOE I had its principal place of business in Germany.    Accordingly,   on   the   clear application of the case law, HOE I's claims accrued in the Cayman Islands and the Cayman   Islands   statute   of   limitations applies.   Collineo does not dispute that, under   the   Cayman   Islands   statute   of limitations, HOE I's claims are timely.

Collineo   nevertheless   argues   that   the Court should consider case law holding that a *trust* sustains economic injury in the place where the trust's beneficiaries reside since it is the beneficiaries that ultimately suffer any harm.   (Collineo Mem. at 13–14 (citing *Appel v. Kidder, Peabody & Co.*, 628 F. Supp. 153, 155–56 (S.D.N.Y. 1986)).)  HOE I, however, is a corporation, not a trust, and the comparison is unpersuasive for a number of   reasons.     First,   unlike   a   trust,   a corporation is a distinct legal entity that has a place of incorporation and principal place of business.   *See Maiden v. Biehl*, 582 F. Supp. 1209, 1218 (S.D.N.Y. 1984) ("[A] trust   is   not   a   distinct   legal   entity   like   a corporation[;] it is a set of legal relationships with respect to property.").  In *Appel*, it was necessary to consider the residence of the beneficiaries because the trust itself had neither   a   place   of   incorporation   nor   a

---

AMA § 5.15 fails for the same reasons that Wells Fargo's argument based on CAA § 4(a) fails.  Indeed, the argument that Collineo acted with gross negligence is even stronger, since, unlike Wells Fargo, Collineo was not entitled to rely on factual representations made by another party.

[11] The parties do not dispute that HOE I's claims are timely under the six-year New York statute of limitations for contract claims.  *See* N.Y. C.P.L.R. § 213(2).

principal place of business. 628 F. Supp. at 156.[12] Second, even as to trusts, there is disagreement about whether the residence of beneficiaries should be deemed the location of an economic injury. *See Maiden*, 582 F. Supp. at 1218 (rejecting as "unworkable" the rule that a trust sustains injury where its beneficiaries reside, since beneficiaries can reside in multiple states). Finally, a New York appellate court has specifically rejected the contention that a corporation sustains injuries where its owners reside. *Proforma Partners, LP v. Skadden Arps Slate Meagher & Flom, LLP*, 720 N.Y.S.2d 139, 140 (App. Div. 2001) ("[I]t is not the place of residence of the owners of plaintiff [corporation] that is pertinent but the location of the business itself and the site of the harm suffered.").

For these reasons, the Court finds that HOE I's injury accrued in the Cayman Islands and HOE I's claims are governed by the statutes of limitations of New York and the Cayman Islands. Under those statutes, the claims are timely and Defendants' motion to dismiss on this ground must be denied.

### 2. Assignment of Rights Under CAA and AMA

Collineo argues that HOE I assigned to Wells Fargo its right to sue under the CAA and AMA and that HOE I therefore lacks standing to sue under those contracts. The Indenture contains a "Granting Clause" that provides, in relevant part:

> The Co-Issuers hereby Grant to the Indenture Trustee . . . all of their right, title[,] and interest in, to[,] and

under . . . the Asset Management Agreement and the Collateral Administration Agreement.

(Indenture Granting Clause.)[13] The term "Grant" means, among other things, "assign." (*Id.* at 21.) Section 15.01(a) of the Indenture further provides that:

> The Issuer . . . hereby assigns, transfers, conveys[,] and sets over to the Indenture Trustee . . . all of the Issuer's estate, right, title[,] and interest in, to[,] and under the Asset Management Agreement . . . *provided* that the Indenture Trustee hereby grants the Issuer a license to exercise all of the Issuer's rights pursuant to the Asset Management Agreement . . . which license shall be automatically revoked . . . upon a default in the performance, or material breach, of any covenant, representation, warranty[,] or other agreement of the Asset Manager under the Asset Management Agreement . . . if the Holders of at least 25% of the Aggregate Outstanding Amount of the Notes of any Class give notice of such default or material breach to the Indenture Trustee and the Asset Manager and such default or material breach (if remediable) continues for a period of thirty (30) days.

(Indenture § 15.01(a).) Taken together, these provisions assign all of HOE I's rights under the AMA and CAA to Wells Fargo as Indenture Trustee. Section 15.01(a) grants

---

[12] The question in *Appel* was whether the injury occurred where the beneficiaries resided or where the brokerage firm administering the trust conducted business. 628 F. Supp. at 155–56.

[13] The Granting Clause is found before Article I of the Indenture. These pages of the Indenture are not paginated or given section numbers. The term "Co-Issuers" includes both the Issuer HOE I and the Co-Issuer House of Europe Funding LLC. (Indenture at 10.)

HOE I a license to exercise its rights under the AMA – but not the CAA – but this license is automatically revoked if (1) there is a "material breach" of the AMA by Collineo, (2) the holders of at least 25 percent of the notes of any class give notice of the breach to both Wells Fargo and Collineo, and (3) the breach lasts for more than thirty days.

A party that has assigned away its rights under a contract lacks standing to sue for breach of that contract. *See, e.g.*, *Nat'l Fin. Co. v. Uh*, 720 N.Y.S.2d 17, 18 (App. Div. 2001) ("Having assigned the note, [plaintiff] was no longer the real party in interest with respect to an action upon the instrument and retained no right to pursue a claim against defendant."). It follows that HOE I lacks standing to sue Collineo for breaches of the CAA under any circumstances, and for breaches of the AMA if the three conditions discussed above are met.[14]

HOE I argues that it retains standing to sue under both contracts pursuant to sections 5.11 and 7.07(c) of the Indenture. Section 5.11 provides:

> No right or remedy herein conferred upon or reserved to the Indenture Trustee or to the Noteholders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy . . . .

(Indenture § 5.11.) Section 7.07(c) provides:

> The Issuer shall enforce all of its material rights and remedies under the Asset Management Agreement and the Collateral Administration Agreement.

(Indenture § 7.07(c).) Neither provision affects the conclusion that HOE I assigned its rights to Wells Fargo. Section 5.11 is irrelevant because the non-exclusive and cumulative nature of rights has no bearing on *who* has standing to assert them. Section 7.07(c) is irrelevant both because it creates a duty rather than a right (the Issuer "*shall* enforce," not the Issuer "retains the right to enforce"), and because there is no inconsistency between a provision that confers a right to HOE I and a provision that assigns all such rights to Wells Fargo.

For these reasons, the Court finds that HOE I lacks standing to sue Collineo for any breaches of the CAA. However, the Court finds that, on the pleadings, HOE I has standing to sue Collineo for breaches of the AMA. Under section 15.01(a) of the Indenture, HOE I has a license to assert its rights under the AMA, which is revoked only if, among other things, noteholders inform *both* Wells Fargo and Collineo of a material breach. (Indenture § 15.01(a).) The Complaint alleges that Plaintiffs – including EAA, which holds 100 percent of the Class A1 notes – provided notice of a material breach to Wells Fargo. (Compl. ¶¶ 26, 58.) However, there is no allegation that noteholders provided notice to Collineo. Collineo objects that it received such notice through a tolling agreement referenced in a March 22, 2013 letter to the Court and when this suit was commenced. (Collineo Rep. at

---

[14] The Court does not consider whether the Granting Clause deprives HOE I of standing to sue *Wells Fargo*, as Collateral Administrator, for breaches of the CAA. As already discussed in connection with EAA's declaratory judgment claim against Wells Fargo, indenture provisions must not be construed to require that the indenture trustee sue itself. *See Cruden*, 957 F.2d at 968; *Ellington Credit Fund*, 837 F. Supp. 2d at 185; *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 498-99 (S.D.N.Y. 2013).

3–4.)  But the Court may not consider, on Defendants' motion to dismiss, the contents of any tolling agreement between Collineo and Plaintiffs, since this document was not attached to or referenced in the Complaint. The Court also rejects the contention that the notice contemplated by section 15.01(a) is provided by the initiation of a lawsuit, since, on that interpretation, the license granted to HOE I would be meaningless.  HOE I's license to assert its rights under the AMA would be empty if such license is automatically terminated as soon as HOE I attempts to exercise it by bringing suit.  For these reasons, the Court finds that HOE I lacks standing to sue Collineo under the CAA, but has standing to sue under the AMA because the Complaint does not allege that noteholders notified Collineo of its material breach prior to the institution of this suit by HOE I.

Finally, HOE I seeks leave to amend the Complaint to assert an additional breach of contract claim against Wells Fargo to the extent the Court finds that Wells Fargo had exclusive standing to bring claims on behalf of HOE I.  (Opp. at 27–28.)  The Court will grant this request, since Wells Fargo has been put on notice of its potential liability on this ground.  (Compl. ¶ 58 ("Wells Fargo failed to bring any action, despite being required to do so under the terms of the Indenture.").)

3.  EAA's Declaratory Judgment Claim

Like HOE I, EAA brings a claim against Collineo seeking a declaratory judgment that Collineo is not entitled to indemnification under section 5.15 of the AMA.  Collineo argues that under section 5.08 of the Indenture, noteholders like EAA are barred from suing Collineo except with respect to a continuing Event of Default and even then may sue only if certain conditions are met.  In light of the dismissal of EAA's contract claims, the Court considers this argument only with respect to EAA's declaratory judgment claim and finds that EAA's claim is barred by section 5.08.

Section 5.08 provides that "[n]o Holder of any Note shall have *any* right to institute *any* Proceedings, judicial or otherwise, with respect to this Indenture . . . or for any remedy hereunder," unless, among other conditions, "[s]uch Holder has previously given written notice to the Indenture Trustee of a continuing Event of Default" and holders of at least 25 percent of the controlling class of notes have demanded that the Indenture Trustee bring suit "in respect of such Event of Default." (Indenture § 5.08 (emphases added).)  On the plain language of this provision, EAA cannot sue except with respect to an Event of Default and, even then, may sue only if the other conditions are met.  The parties agree that the allegations here do not pertain to an Event of Default, which is defined at section 5.01 of the Indenture.  (Collineo Mem. at 21; Opp. at 32.)  Accordingly, on the plain language of section 5.08, EAA cannot bring suit against Collineo.[15]

Plaintiffs attempt to resist this conclusion on two grounds, neither of which is persuasive.  First, Plaintiffs argue that section 5.08 applies only to cases "with respect to this Indenture . . . or for any remedy hereunder" and that EAA's declaratory judgment claim is neither.  As discussed and as Plaintiffs themselves assert in connection with a different argument (Opp. at 34), the three Transaction Documents all govern the same transaction and should be read together.  Furthermore, the indemnification clause, by its express

---

[15]  As discussed earlier, section 5.08 cannot be interpreted to prohibit noteholder suits against Wells Fargo, since it would be absurd to demand that Wells Fargo sue itself.  *See Cruden*, 957 F.2d at 968.

terms, extends to "any claim, action, proceeding[,] or investigation with respect to any pending . . . litigation . . . caused by, arising out of[,] or in connection with . . . the transactions contemplated *by the Indenture* or this Agreement." (AMA § 5.15(b) (emphasis added).) Thus, the Court concludes that section 5.08 of the Indenture extends to EAA's declaratory judgment claim.

Second, Plaintiffs argue that section 5.08 only applies to suits based on a continuing Event of Default. This interpretation is contrary to the plain language of section 5.08, which provides that "any Proceedings, judicial or otherwise" are barred and that proceedings with respect to an Event of Default are a narrow *exception* to this rule. (Indenture § 5.08.) Indeed, this Court has previously rejected a very similar argument based on a nearly identical no-action clause. *Ellington Credit Fund*, 837 F. Supp. 2d at 185; *see also Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*, 677 F.3d 1286, 1293 n.7 (11th Cir. 2012).

Accordingly, the Court dismisses EAA's declaratory judgment claim against Collineo.

## IV. CONCLUSION

For the reasons discussed above, IT IS HEREBY ORDERED THAT Defendants' motions to dismiss are GRANTED on the following claims: (1) Plaintiffs' claims against Wells Fargo arising out of preparation of the Monthly Reports, (2) EAA's breach of contract claim, (3) Plaintiffs' claims based on the Event of Default resulting from Wells Fargo's allegedly improper payment of interest on Class A notes, (4) HOE I's claims against Collineo for breaches of the CAA, and (5) EAA's declaratory judgment claim

against Collineo. Defendants' motions are DENIED in all other respects.

IT IS FURTHER ORDERED THAT the parties shall submit a joint letter no later than April 17, 2014 advising the Court (1) whether HOE I intends to amend the Complaint to assert a breach of contract claim based on Wells Fargo's failure to sue Collineo and (2) if so, whether Defendants intend to move to dismiss any such amended Complaint. If HOE I does not seek to amend the Complaint, or if Defendants do not seek to move to dismiss any such amended Complaint, the joint letter shall (3) propose a date by which Defendants will answer the Complaint or amended Complaint and (4) attach a proposed Case Management Plan and Scheduling Order, the template for which is available through the Court's Individual Practices.

The Clerk of the Court is respectfully directed to terminate the motions pending at Doc. Nos. 16 and 18.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: March 31, 2014
New York, New York

\*        \*        \*

Plaintiffs are represented by Jonathan Pickhardt, Jason Toji Calabro, and Monica Tarazi of Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, New York, NY 10010, and Randall Rainer of Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, Suite 1200, New York, NY 10110.

19

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/2014

Defendant Wells Fargo is represented by Michael Johnson and Sitso Bediako of Alston & Bird, LLP, 90 Park Avenue, New York, NY 10016.

Defendant Collineo is represented by Michael Shuster, Daniel Goldberg, Demian Ordway, and Zachary Kerner of Holwell Shuster & Goldberg, 125 Broad Street, 39th Floor, New York, NY 10004.