```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____         │
│ DATE FILED: __03.30.15__         │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOUSE OF EUROPE FUNDING I LTD.,

Plaintiff,

-v-

WELLS FARGO BANK, N.A. *and*
COLLINEO ASSET MGMT. GMBH,

Defendants.

No. 13-cv-519 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff House of Europe I, Ltd. ("HOE I"), a special purpose vehicle and issuer of collateralized debt obligations ("CDOs"), brings this action against Defendants Collineo Asset Management GMBH ("Collineo") and Wells Fargo Bank, N.A. ("Wells Fargo") for breach of contract and declaratory judgment in connection with Defendants' alleged mismanagement of the assets underlying HOE I. Now before the Court is Collineo's motion for summary judgment. For the reasons set forth below, the Court grants Collineo's motion.

I. BACKGROUND

The Court presumes the parties' familiarity with the facts of this case, which are set forth more fully in the Court's March 31, 2014 Opinion and Order granting in part and denying in part Defendants' motion to dismiss. (Doc. No. 47 (the "March 31 Opinion" or "March 31 Op.").)[1] As

---

[1] The following facts are drawn from the parties' Local Civil Rule 56.1 Statements (Doc. No. 64 ("Collineo 56.1 Stmt.") & Doc. No. 73 ("HOE I 56.1 Stmt.")), the exhibits attached thereto, the Court's March 31 Opinion, and the exhibits attached to the Complaint (Doc. No. 1 Exs. 1–4). Unless otherwise noted, where only one party's 56.1 Statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refuse that

noted in that opinion, this case arises out of investment losses that were allegedly sustained by HOE I and its senior noteholder, Erste Abwicklungsanstalt ("EAA"), as a result of breaches by Collineo and Wells Fargo of agreements governing the assets underlying HOE I.  In essence, HOE I alleges that Collineo and Wells Fargo breached these agreements by purchasing or causing HOE I to purchase financial assets that failed to comply with certain eligibility criteria that the assets in the CDO transaction were required to meet.

The agreements governing this CDO transaction (the "Governing Documents") are the Amended and Restated Indenture (the "Indenture"), entered into by and among HOE I, House of Europe Funding I LLC, and Wells Fargo; the Collateral Administration Agreement (the "CAA"), entered into by and among HOE I, Wells Fargo, and Collineo; and the Asset Management Agreement (the "AMA"), entered into by and between HOE I and Collineo.  (March 31 Op. at 2.) For the Governing Documents, HOE I was the Issuer, Wells Fargo was the Indenture Trustee, and Collineo was the Asset Manager.  (*Id.*)

Two provisions of the Indenture are relevant to this action.  First, the Granting Clause of the Indenture provides that the "Co-Issuers hereby Grant to the Indenture Trustee . . . all of their right, title and interest in, to and under . . . the Asset Management Agreement and the Collateral Administration Agreement."  Second, Section 15.01(a) of the Indenture, entitled "Assignment of Asset Management Agreement," states in relevant part that:

> The Issuer . . . hereby assigns, transfers, conveys and sets over to the Indenture Trustee . . . all of the Issuer's estate, right, title and interest in, to and under the

---

fact, or merely objects to inferences drawn from that fact.  In deciding this motion, the Court also considered Collineo's memorandum of law in support of its motion (Doc. No. 61 ("Collineo Mem.")), HOE I's memorandum of law in opposition (Doc. No. 71 ("HOE I Opp.")), and Collineo's reply (Doc. No. 78 ("Collineo Rep.")), along with the affidavits and exhibits attached thereto.

Asset Management Agreement, . . . *provided* that the Indenture Trustee hereby grants the Issuer a license to exercise all of the Issuer's rights pursuant to the [AMA], . . . which license shall be automatically revoked . . . [(1)] upon a default in the performance, or material breach, of any covenant, representation, warranty or other agreement of the Asset Manager under the [AMA] . . . [(2)] if the Holders of at least 25% of the Aggregate Outstanding Amount of the Notes of any Class give notice of such default or material breach to the Indenture Trustee and the Asset Manager and [(3)] such default or material breach (if remediable) continues for a period of thirty (30) days.

Thus, the Granting Clause of the Indenture provides that HOE I assigns its rights under the AMA and CAA to Wells Fargo as Indenture Trustee, while Section 15.01(a) grants HOE I a license to exercise those rights under the AMA, including the right to "take any legal action upon the material breach of an obligation of the Asset Manager thereunder, including the commencement, conduct and consummation of proceedings at law or in equity." However, Section 15.01(a) goes on to provide that HOE I's license to sue under the AMA is automatically revoked if the three conditions above are met, at which time the right to sue Collineo for breaching the AMA would revert back to the Trustee, Wells Fargo.

Beginning in 2006, the United States residential real estate market suffered a massive decline that contributed to a meltdown of the financial system. As a result, many investment vehicles with exposure to U.S. residential mortgages and related assets experienced severe losses. *See, e.g., Woori Bank v. Merrill Lynch*, 923 F. Supp. 2d 491, 493 (S.D.N.Y. 2013). On January 23, 2013, when HOE I and EAA filed the Complaint, the CDO securities at issue here had accrued losses of approximately $143 million. (March 31 Op. at 3.) HOE I and EAA allege that Collineo and Wells Fargo breached the AMA and CAA by failing to ensure that the assets underlying HOE I complied with the eligibility criteria set forth in the Governing Documents.

3

As noted above, the Court granted in part and denied in part Wells Fargo's and Collineo's motions to dismiss.  Specifically, as relevant here, the Court granted Collineo's motion to dismiss with respect to HOE I's claims for breaches of the CAA because it found that HOE I lacked standing to sue Collineo, since it had assigned those rights to Wells Fargo under the CAA.  (March 31 Op. at 16.)  However, the Court denied Collineo's motion to dismiss with respect to HOE I's claims for breaches of the AMA because the Court could not conclude, on the pleadings, that one of the conditions necessary for the revocation of HOE I's license under the AMA – that EAA, the senior noteholder, give notice of the alleged material breach to Collineo – had in fact occurred.[2] (March 31 Op. at 17.)  Shortly thereafter, on April 17, 2014, Collineo submitted a pre-motion letter seeking leave to file the instant motion for summary judgment on HOE I's remaining claims for breaches of the AMA.  (Doc. No. 52.)  On April 21, 2014, HOE I submitted its response to Collineo's pre-motion letter, in which it argued for the first time that the Court should "revisit its determination that HOE I lacks standing to sue Collineo under the CAA."  (Doc. No. 55 at 3 n.1.)  However, HOE I never filed a motion for reconsideration.  Instead, on May 15, 2014, Collineo filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, which was fully submitted on July 14, 2014.

## II. MOTION FOR SUMMARY JUDGMENT

As noted above, the sole issue to be resolved on Collineo's motion for summary judgment is whether EAA provided notice of a material breach to Collineo.  If EAA did in fact provide

---

[2] The Court also granted Defendants' motion to dismiss EAA's breach of contract claims, but it denied Defendants' motion to dismiss EAA's declaratory judgment claim.  On April 14, 2014, EAA filed a notice of voluntary dismissal against Collineo and Wells Fargo.  (Doc. No. 48.)

notice, then the three conditions necessary to revoke HOE I's license to sue under the AMA will have been met, and without a license to sue under the AMA, HOE I would lack standing to sue Collineo. Because the undisputed facts before the Court establish that EAA provided notice of a material breach to Collineo, the Court finds that HOE I lacks standing to sue Collineo.

A. Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks

5

omitted).  "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d

396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the

[nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely

disputed fact.  A moving party is "entitled to judgment as a matter of law" on an issue if (1) it

bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the

nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is,

point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving

party's [position]," *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### B. Discussion

Under New York law, which governs the Indenture and CDO notes (*see* Indenture § 14.10),

contractual interpretation at summary judgment takes place in two stages.  First, a court must

determine, as a matter of law, whether the disputed contractual terms are ambiguous.  *See Law*

*Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010)

(citations and internal quotation marks omitted).  "No ambiguity exists where the contract

language has a definite and precise meaning, unattended by danger of misconception in the purport

of the [contract] itself, and concerning which there is no reasonable basis for a difference of

opinion."  *Id.* at 467 (citations and internal quotation marks omitted).  If a court concludes that the

contractual terms are "complete, clear, and unambiguous," it must proceed to interpret those terms

according to their "plain meaning."  *Id.* (citations and internal quotation marks omitted).  However,

if a court finds that the contractual language is ambiguous, then it should typically deny summary

judgment.  Nevertheless, a court may proceed to the second stage and "resolve ambiguity in

contractual language as a matter of law if the evidence presented about the parties' intended

meaning [is] so one-sided that no reasonable person could decide the contrary," or if the nonmoving party "fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) (citations and internal quotation marks omitted).

As described above, while Section 15.01(a) of the Indenture grants HOE I a license to sue for breaches of the AMA, Section 15.01(a) also automatically revokes that license when certain conditions are satisfied. Here, the parties do not dispute that EAA held at least 25 percent of HOE I's senior notes (Collineo 56.1 ¶ 6), that EAA informed both Wells Fargo and Collineo that it "believe[d]" that Collineo breached the AMA when it purchased certain assets (*Id.* ¶ 8, 12 & 13; Declaration of Dirk Bergander, dated May 14, 2014, Doc. No. 62 ("Bergander Decl."), Ex. 2 ("March 15 Letter"); Bergander Decl. Ex. 3 ("March 28 Email")), or that EAA's complained-of breach was not remediable and therefore did not trigger the thirty day cure period (HOE I Opp. at 9). Therefore, the only issue that remains is whether the notice that EAA provided to Collineo – to satisfy the second condition – was sufficient under the terms of the Indenture.

The record is clear, and undisputed, that on March 15, 2012, after the CDO's noteholders suffered large losses, EAA sent a letter to Wells Fargo to (1) notify it that EAA held 100% of HOE I's senior notes and that EAA "believe[d]" Collineo breached § 12.02 of the Indenture by purchasing certain assets, and (2) instruct it to institute proceedings against Collineo on behalf of HOE I. (March 15 Letter.) On March 23, 2012, Wells Fargo sent a letter to Collineo, enclosing a copy of the March 15 Letter, notifying Collineo of EAA's letter. (Bergander Decl. Ex. 1 ("March 23 Letter").) On March 28, 2012, EAA sent a follow-up email to Collineo, expressly referencing

7

the March 15 letter that EAA had sent to Wells Fargo, accusing Collineo of breaching the Governing Documents.  (March 28 Email.)

Section 15.01(a) states that a noteholder must "give notice" to "the Indenture Trustee and the Asset Manager," but it does not elaborate on how or in what form the noteholder must deliver that notice.  While there is a provision in the Indenture entitled "Notices," Section 15.01(a) does not reference it.  Furthermore, the "Notices" provision, which requires that notice be "mailed, postage prepaid, hand delivered, sent by overnight courier service guaranteed next day delivery or by telecopy," is limited to notices that must be filed with "one of the parties listed," including the Issuer (HOE I), Co-Issuer (House of Europe Funding I LLC), Moody's Investors Service, WestLB Securities, and Indenture Trustee (Wells Fargo), but *not* the Asset Manager, Collineo.  (Indenture § 14.03.)   Therefore, HOE I can point to no provision of the Indenture that imposes any requirements of any kind on the type of notice that a noteholder must give to the Asset Manager under Section 15.01(a).  Because the parties do not dispute that Wells Fargo sent a copy of EAA's March 15 Letter to Collineo, or that EAA sent an email to Collineo that expressly referenced the March 15 Letter "regarding potential claims by EAA and HOE I regarding the failure of Wells Fargo and Collineo to comply with the HOE I eligibility criteria in regard to certain collateral purchases" (March 28 Email), the Court finds that there is no genuine dispute with respect to whether EAA provided the Asset Manager with adequate notice pursuant to Section 15.01(a).

Nevertheless, HOE I now raises a new argument, asserting for the first time the existence of an additional requirement – namely, that the Indenture Trustee must *agree* with the noteholder's claim of material breach before the Issuer's license can be revoked.  This argument has no basis in the language of the Indenture, and is inconsistent with the Court's March 31 Opinion.  Indeed,

8

the Court already determined that the "material breach" condition was met when it held in its March 31 Opinion that the only reason HOE I's claims under the AMA against Collineo could proceed was "because the Complaint does not allege that noteholders *notified* Collineo of its material breach." (March 31 Op. at 18 (emphasis added).)

Furthermore, Section 15.01(a) of the Indenture presumes that the noteholder who provides notice of the material breach is the party who must conclude that a material breach occurred. Section 15.01(a) states that the Issuer's license is revoked "if Holders of at least 25% of the Aggregate Outstanding Amount of the Notes of any Class give notice of such default or material breach to the Indenture Trustee and the Asset Manager." This condition clearly contemplates that the determination of whether a default or material breach occurred must be made *before* the Indenture Trustee and Asset Manager receive notice. As the noteholder is the entity which is providing the notice, it naturally follows that the noteholder is the entity which must conclude that a material breach occurred. Requiring that the Trustee concur with that determination would render the "*such* default or material breach" language nonsensical and would make the notice requirement pointless. More importantly, nothing in the Indenture or Section 15.01(a) supports such a conclusion.

Accordingly, the Court finds that there is no genuine dispute as to whether the license revocation conditions have been met and concludes that HOE I's license to sue under the AMA was revoked. As a result, the Court concludes that HOE I lacks standing to sue Collineo, and therefore grants summary judgment in favor of Collineo on HOE I's breach of contract claim.

III. REQUEST FOR RECONSIDERATION

HOE I attempts to avoid the Court's present conclusion that HOE I lacks standing to sue

9

Collineo under the AMA, and its prior conclusion that HOE I lacks standing to sue Collineo under the CAA, by arguing that HOE I's assignment under Section 15.01(a) was not a complete one. In essence, HOE I asks the court to reconsider its March 31 Opinion, even though it never made a motion for such relief. For the reasons set forth below, the Court declines to revise its prior ruling that HOE I assigned all of its rights under the AMA and CAA to Wells Fargo.

A.  Legal Standard

"A motion for reconsideration . . . 'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Atl. Recording Corp. v. BCD Music Grp., Inc.*, No. 08-cv-5201 (WHP), 2009 WL 2046036, at *1 (S.D.N.Y. July 15, 2009) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "Alternatively, a motion for reconsideration may be granted to 'correct a clear error or prevent manifest injustice.'" *Banco de Seguros Del Estado v. Mut. Marine Offices, Inc.*, 230 F. Supp. 2d 427, 428 (S.D.N.Y. 2002) (quoting *Griffin Indus., Inc. v. Petroiam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)). Importantly, a motion for reconsideration "may not be used to advance new facts, issues[,] or arguments not previously presented to the Court, nor may it be used as a vehicle for re-litigating issues already decided by the Court." *Am. ORT, Inc. v. ORT Israel*, No. 07-cv-2332 (RJS), 2009 WL 233950, at *3 (S.D.N.Y. Jan. 22, 2009) (quotation marks omitted); *accord Kahala Corp. v. Holtzman*, No. 10-cv-4259 (DLC), 2011 WL 1118679, at *1 (S.D.N.Y. Mar. 24, 2011) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos., Inc.*, 265 F.3d 97, 115 (2d Cir. 2001)). Finally, "[t]he standard for reconsideration is strict and the decision is 'within the sound discretion of the district court.'" *Atl. Recording*, 2009 WL 2046036, at *1 (internal quotation marks omitted).

B.  Discussion

In its March 31 Opinion, the Court held that the Granting Clause and Section 15.01(a) of the Indenture, in the first instance, "assign all of HOE I's rights under the AMA and CAA to Wells Fargo as Indenture Trustee." (March Op. at 16.)  The Court further held that this assignment deprived HOE I of standing to sue Collineo for breaches of the CAA under any circumstances, and held that HOE I lacked standing to sue for breaches of the AMA if certain conditions were met, under the well-established proposition that a party "that has assigned away its rights under a contract lacks standing to sue for breach of that contract." (March 31 Op. at 17.)  Therefore, the Court granted Collineo's motion to dismiss with respect to HOE I's claims under the CAA, but declined to grant Collineo's motion to dismiss with respect to HOE I's claims under the AMA because it could not conclude, on the face of the pleadings, that Collineo received notice of a material breach.

As described above, on April 17, 2014, shortly after the Court issued its March 31 Opinion, Collineo submitted a pre-motion letter seeking leave to file the instant motion for summary judgment.  On April 21, 2014, HOE I submitted its response to Collineo's pre-motion letter, in which it asserted for the first time that the Court should "revisit its determination that HOE I lacks standing to sue Collineo under the CAA." (Doc. No. 55.)  HOE I argued that the Indenture's assignment clause was in fact an assignment as security, and therefore HOE I retained a residual interest in the AMA and CAA.  HOE I further argued that it retained the right to sue Collineo – under both the CAA and AMA – if Wells Fargo failed to do so.

HOE I's request fails for several reasons.  First, HOE I never filed a motion for reconsideration.  Asking the Court to "use its discretion" to "revisit its [prior] determination" in

the footnote of a responsive pre-motion letter is patently inadequate.  *See* Local Civil Rule 6.3 (requiring that along with a "notice of motion for reconsideration," the party shall serve "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked").  Equally insufficient is HOE I's attempt to use its opposition brief to Collineo's motion for summary judgment as the vehicle for seeking reconsideration of a prior Court order.  Moreover, even if the Court were to consider HOE I's instant opposition brief as an adequate means of moving for reconsideration, it is over two months late.  *Id.* (requiring that "a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion").  In fact, HOE I is out of time even if the Court were to deem the April 21, 2014 pre-motion letter response as its motion for reconsideration.[3]

Finally, even if the Court were to consider HOE I's improper and untimely request for reconsideration, it would fail on the merits.  First, HOE I never argued in its memorandum of law in opposition to Collineo's motion to dismiss that the Indenture's assignment was one for security. (*See* Doc. No. 31.)  Accordingly, this argument is not properly before the Court.  *See Am. ORT, Inc.*, 2009 WL 233950, at *3 (holding that "a party moving for reconsideration may not 'advance new facts, issues, or *arguments* not previously presented to the Court'") (emphasis added).

---

[3] HOE I attempts to avoid this conclusion through reliance on Rule 54 of the Federal Rules of Civil Procedure, which states that "any order or other decision . . . that adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and the parties' rights and liabilities."  Clearly, Rule 54 is not a trump card that wipes away all other deadlines.  Indeed, if parties could invoke Rule 54 to defeat Local Civil Rule 6.3's fourteen-day requirement, Local Civil Rule 6.3 would be rendered meaningless.

Second, the Court also reaffirms its prior conclusion that the assignment in the Indenture was complete and not one for security. The cases that HOE I relies on are readily distinguishable, as each involved assignments that were made to cover preexisting debts owed to the assignee. *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 125 (2d Cir. 1984) (observing that the assignment before it was "more in the nature of an assignment as security for an antecedent debt owed to the assignee"); *RBS Holdings, Inc. v. Gordon & Ferguson, Inc.*, No. 06-cv-6406 (HB), 2008 WL 782616, at *3 (S.D.N.Y. Mar. 26, 2008) (holding that the "plain language shows that the assignment was not complete and was security for RBS's preexisting debt"); *Fifty States Mgmt. Corp. v. Pioneer Auto Parks, Inc.*, 355 N.Y.S.2d 856, 856 (App. Div. 4th Dep't 1974) (cabining the holding to "[w]here the rents are assigned as security and collected to service an underlying indebtedness"). The assignment here, however, was to secure future payments from CDO notes – not to pay off an antecedent debt. *See Macondo's Profit Corp. v. Motorola Commc'ns.*, 863 F. Supp. 148, 149 (S.D.N.Y. 1994) (holding that an assignment to secure future advances was complete, unlike "a situation in which an assignor merely provided additional collateral for a pre-existing, or antecedent, debt," which would be an assignment for security). Because HOE I cites no "controlling decisions or data that the court overlooked," and raises no arguments that would otherwise warrant reconsideration of the Court's March 31 Opinion, the Court reaffirms its conclusion that the Indenture's assignment was complete.

## IV. CONCLUSION

The Court's March 31 Opinion granted Collineo's motion to dismiss HOE I's claims under the CAA, but denied Collineo's motion to dismiss HOE I's claims under the AMA because the Court could not conclude, on the face of the pleadings, that one of Section 15.01(a)'s conditions

had been met.  As set forth above, the Court now finds that this one condition – that the noteholders

adequately notified Collineo of its material breach – was met, and that HOE I therefore lacks

standing to directly sue Collineo.  The Court also rejects HOE I's request that the Court reconsider

its conclusion that the Indenture's assignment was a complete one.  Accordingly, IT IS HEREBY

ORDERED THAT Collineo's motion for summary judgment is granted.  The Clerk of the Court

is respectfully directed to terminate the motion pending at docket entry 60.

SO ORDERED.

Dated:        March 30, 2015
              New York, New York

              _____
              RICHARD J. SULLIVAN
              UNITED STATES DISTRICT JUDGE

14