UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  03.31.15
```

HOUSE OF EUROPE FUNDING I LTD.,

Plaintiff,

-v-

No. 13-cv-519 (RJS)
OPINION AND ORDER

WELLS FARGO BANK, N.A. *and*
COLLINEO ASSET MGMT. GMBH,

Defendants.

RICHARD J. SULLIVAN, District Judge:

Plaintiff House of Europe I, Ltd. ("HOE I"), a special purpose vehicle and issuer of collateralized debt obligations ("CDOs"), brings this action against Defendants Collineo Asset Management GMBH ("Collineo") and Wells Fargo Bank, N.A. ("Wells Fargo") for breach of contract and declaratory judgment in connection with Defendants' alleged mismanagement of the assets underlying HOE I. Now before the Court is HOE I's motion to dismiss Wells Fargo's counterclaims. For the reasons set forth below, the Court grants HOE I's motion.

I. BACKGROUND

The Court presumes the parties' familiarity with the facts of this case, which are set forth more fully in the Court's March 31, 2014 Opinion and Order granting in part and denying in part Defendants' motion to dismiss (Doc. No. 47 (the "March 31 Opinion" or "March 31 Op.").)[1] As

---

[1] The following facts are drawn from HOE I's Complaint (Doc. No. 1 ("Complaint" or "Compl.")), Wells Fargo's Answer and Counterclaims (Doc. No. 59 ("Answer" or "Ans.")), and the exhibits attached thereto. In deciding HOE I's motion, the Court also considered HOE I's memorandum of law in support of its motion to dismiss (Doc. No. 75 ("HOE I Mem.")), Wells Fargo's memorandum of law in opposition (Doc. No. 79 ("Wells Fargo Opp.")), and HOE

noted in that opinion, this case arises out of investment losses that were allegedly sustained by HOE I and its senior noteholder, Erste Abwicklungsanstalt ("EAA"), as a result of breaches by Collineo and Wells Fargo of agreements governing the assets underlying HOE I.  In essence, HOE I alleges that Collineo and Wells Fargo breached these agreements by purchasing or causing HOE I to purchase financial assets that failed to comply with certain eligibility criteria that the assets in the CDO transaction were required to meet.

The agreements governing this CDO transaction (the "Governing Documents") are the Amended and Restated Indenture (the "Indenture"), entered into by and among HOE I, House of Europe Funding I LLC, and Wells Fargo; the Collateral Administration Agreement (the "CAA"), entered into by and among HOE I, Wells Fargo, and Collineo; and the Asset Management Agreement (the "AMA"), entered into by and between HOE I and Collineo.  (March 31 Op. at 2.) For the Governing Documents, HOE I was the Issuer, Wells Fargo was the Indenture Trustee, and Collineo was the Asset Manager.  (*Id.*)

In essence, HOE I alleges that multiple provisions in the Governing Documents obligated Wells Fargo, as Trustee, and Collineo, as Asset Manager, to avoid selecting or investing in underlying assets when doing so would breach certain criteria that the assets in the CDO were required to meet (the "Eligibility Criteria" (Indenture § 12.02)).  (Compl. ¶¶ 32–41.)  According to the Complaint, on at least six separate occasions between April 2006 and July 2007, Defendants invested in assets (the "Disputed Assets") that failed to comply with the Eligibility Criteria.  (*Id.* ¶¶ 50–51.)  The Complaint further alleges that on March 15, 2011, EAA, the "Controlling Party" that owned a majority of the senior notes, demanded that Wells Fargo bring appropriate legal action

---

I's reply memorandum of law (Doc. No. 83 ("HOE I Rep.")), along with the affidavits and exhibits attached thereto.

on behalf of HOE I to recover losses sustained as a result of investment in the Disputed Assets, but that Wells Fargo refused to do so.  (Compl. ¶ 58.)  On January 23, 2013, when HOE I and EAA filed the Complaint, the CDO at issue here had accrued losses of approximately $143 million. (March 31 Op. at 3.)

On May 9, 2014, Wells Fargo filed an answer, denying these allegations and asserting two counterclaims.  (Doc. No. 59.)  The first counterclaim is a "contingent counterclaim" premised on HOE I's core allegation that Collineo and Wells Fargo breached the Governing Documents by purchasing or causing HOE I to purchase the Disputed Assets that failed to comply with the Eligibility Criteria.  Specifically, Wells Fargo alleges that Section 7.11 of the Indenture required HOE I to deliver annual Officer's Certificates to Wells Fargo, attesting that HOE I performed a review of its activities and performance and that HOE I had fulfilled all of its obligations under the Indenture. (Ans. ¶ 27.)  Wells Fargo further alleges that one of HOE I's obligations under the Indenture was to ensure that the Disputed Assets complied with the Eligibility Criteria.  Thus, Wells Fargo argues that "[i]n the event the Court accepts HOE I's assertion" that Wells Fargo and Collineo breached the Governing Documents by purchasing or causing HOE I to purchase the Disputed Assets in violation of the Eligibility Criteria, then "HOE I's certification contained in the . . . Officer's Certificate[s] [dated July 20, 2007 and April 4, 2008 were] materially false" because HOE I could not have truthfully represented that it had fulfilled its obligations under Section 7.11 if the Disputed Assets in fact breached the Indenture.  (*Id.* ¶¶ 28–33.)

Wells Fargo's second counterclaim is premised on an alleged indemnification agreement that HOE I executed with EAA after EAA voluntarily dismissed its claims against Defendants. (*Id.* ¶ 16.)  Wells Fargo argues that HOE I agreed to the indemnification arrangement with EAA

in violation of Section 7.10(d) of the Indenture, which, in relevant part, prohibited HOE I from entering into a "material new agreement" without providing notice to noteholders and rating agencies. (*Id.* ¶ 13.) Wells Fargo alleges that HOE I never disclosed its indemnification agreement with EAA, and therefore breached Section 7.10(d) of the Indenture. (*Id.* ¶ 21.) Wells Fargo also argues that any benefits or proceeds from the alleged indemnification agreement with EAA fall within the Indenture's Granting Clause, which provides that HOE I pledges to Wells Fargo all title to and rights in assets owned by HOE I (the "Collateral" (Indenture at 1–2)). (*Id.* ¶ 10.) Wells Fargo alleges that HOE I has breached the Granting Clause because it has not turned over to Wells Fargo any benefits or proceeds from the indemnification agreement, including attorney's fees that may have been advanced to HOE I by EAA during the course of this litigation. (*Id.* ¶¶ 20, 23.)

On June 18, 2014, HOE I filed a motion to dismiss Wells Fargo's counterclaims for failure to state a claim. (Doc. No. 74.) The motion was fully submitted on July 14, 2014. (Doc. No. 83.)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint or counterclaim must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the pleading and draw all reasonable inferences in favor of the claimant. *ATSI Commc'ns*, 493 F.3d at 98. However,

that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the claimant "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] [claims] must be dismissed." *Id*. at 570.

III. DISCUSSION

Under New York law, which governs the Indenture and CDO notes (*see* Indenture § 14.10), "the initial interpretation of a contract is a matter of law for the court to decide." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) (quoting *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998). "[T]he presence or absence of ambiguity is determined by looking within the four corners of the document, without reference to extrinsic evidence." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 236 (2d Cir. 2008) (citation omitted). "Ambiguity in a contract is the inadequacy of the wording to classify or characterize something that has potential significance." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004). And except when "an ambiguity must be construed against the [claimant], a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings." *Id.*

Wells Fargo claims that HOE I breached the Indenture by failing to (1) deliver accurate Officer Certificates in 2007 and 2008 in violation of Section 7.11, (2) disclose its material agreement with EAA concerning this litigation in violation of Section 7.10(d), and (3) turn over the proceeds of its indemnification agreement with EAA concerning this litigation to Wells Fargo

5

in violation of the Granting Clause.   Having applied the principles of New York contract interpretation to the relevant provisions of the Governing Documents, the Court finds that Wells Fargo has failed to plausibly allege that HOE I breached any provision of the Indenture.

A.  Alleged Breach of Section 7.11

Section 7.11 of the Indenture requires HOE I to deliver annually to Wells Fargo an Officer's Certificate stating that (a) it conducted "a review of the activities of the Issuer and of the Issuer's performance under this Indenture during the prior calendar year," and (b) "based on such review, the Issuer has fulfilled all of its obligations under this Indenture throughout such year, or, if there has been a Default in the fulfillment of any such obligation, specifying each such Default known to him or her and the nature and status thereof."  Wells Fargo argues that if HOE I is correct that the Disputed Assets failed to meet the Eligibility Criteria, then the Officer's Certificates issued by HOE I must have falsely certified that it had fulfilled its obligations under the Indenture, in breach of Section 7.11.  Wells Fargo's theory of liability is preposterous and fails for several reasons.

First, Section 7.11(b) requires that HOE I deliver an Officer's Certificate stating that it either "fulfilled all of its obligations under this Indenture" or, if "there has been a Default in the fulfillment of any such obligation," that a "Default" occurred.  The Indenture defines "Default" as "Any Event of Default," which is further defined in Section 5.01 of the Indenture as, *inter alia*, "a default in the performance, or breach, of any other material covenant or other agreement of the Issuer or the Co-Issuer under this Indenture (*other than the covenant to meet the Eligibility Criteria*)."[2]  Therefore, by its very terms, the Indenture excludes "the covenant to meet the

---

[2] Most of the other enumerated "Event[s] of Default" concern lack of payment (*see* Indenture § 5.01(a), § 5.01(b),

Eligibility Criteria" from the definition of a "Default," and thus Section 7.11(b) does not require that HOE I certify compliance with the Eligibility Criteria.

Furthermore, as Section 7.11(b) clearly states, HOE I need certify only that it "has fulfilled all of *its* obligations under this Indenture" (emphasis added).  Therefore, to state a claim against HOE I, under Section 7.11, Wells Fargo must establish that ensuring compliance with the Eligibility Criteria is one of *HOE I*'s obligations.  However, Section 12.02 of the Indenture, which enumerates the Eligibility Criteria, clearly demonstrates that ensuring compliance with the Eligibility Criteria is a duty of the Asset Manager, and possibly the Indenture Trustee, but *not* the Issuer.  (*See* Indenture § 12.02 ("Subject to satisfaction of the [Eligibility Criteria], the *Asset Manager* may instruct the *Indenture Trustee* to invest . . . in Underlying Assets selected by the *Asset Manager*.") (emphasis added).)  Indeed, the Court's March 31 Opinion previously discussed at length the contractual scheme that ensured that the underlying assets complied with the Eligibility Criteria.  The Court concluded that "primary responsibility for selecting assets in compliance with the Eligibility Criteria [lies] with Collineo, not Wells Fargo," but that "Wells Fargo had a contractual duty not to invest in underlying assets if it determined, based on information provided by Collineo or its own calculations, that doing so would breach the Eligibility Criteria." (March 31 Op. at 4–5.)  The Court did not discuss that the Issuer would play *any* role in enforcing compliance with the Eligibility Criteria, precisely because the Indenture so clearly states otherwise.  In fact, the only time Section 12.02 refers to the Issuer at all is to say that "the Issuer need *not* comply with any of the Eligibility Criteria" for a particular type of unrelated asset acquisition.  (*Id.* (emphasis added).)  This last part of Section 12.02 patently demonstrates the lack

---

§ 5.01(c)) or bankruptcy (*see id.* § 5.01(f), § 5.01(g)).

of any affirmative duty on the part of the Issuer with respect to the Eligibility Criteria, and Wells

Fargo can point to no provision that imposes such an affirmative duty.

Wells Fargo's arguments to the contrary are unavailing. Wells Fargo invokes several

Indenture provisions that provide that (1) the Asset Manager acts "on behalf of the Issuer" when

it directs the Trustee to purchase assets that are compliant with the Eligibility Criteria (Indenture

§ 10.02(f)), and (2) when those assets are purchased, it is the Issuer that in fact acquires them (*see,*

*e.g., id.* § 12.03(c)). (Wells Fargo Opp. at 12–14.) From these provisions, and the elementary

proposition that a principal is ultimately responsible for the actions of its agents, *see, e.g., Precedo*

*Capital Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 257 (S.D.N.Y. 2014), Wells Fargo makes the

unjustified leap that HOE I has some implicit obligation to make sure that Collineo complied with

the Eligibility Criteria. But Wells Fargo has the relationship between principal – here, HOE I –

and agent – here, Collineo and Wells Fargo – backwards. The fact that a principal is bound by the

actions of its agents does not mean that the principal assumes the obligations and duties of the

agents, and the suggestion that the agent could sue the principal for not preventing the agent's

breach of its own duties to the principal is simply nonsensical.

Wells Fargo also argues that HOE I is obligated to ensure that the underlying assets comply

with the Eligibility Criteria because the definition of "Underlying Asset" specifically excludes

those assets "that would cause the Issuer to violate any of the Eligibility Criteria" (Indenture at

48). (Wells Fargo Opp. at 11.) Contrary to Wells Fargo's contention, however, the language in

this definition does not "make clear" that HOE I has "ultimate responsibility for [ensuring]

conformity with the Eligibility Criteria." (*Id.*) To the contrary, the language of this Indenture

provision – "that would *cause* the Issuer to violate" rather than "the Issuer *violates*" – reaffirms

8

that the Issuer plays no active role in ensuring compliance with the Eligibility Criteria.

In short, the Court has little difficulty concluding that (1) a "Default" does not encompass breaches of the Eligibility Criteria, and (2) enforcing the Eligibility Criteria is not one of the Issuer's obligations.   Therefore, HOE I cannot be deemed to have submitted false Officer's Certificates on July 20, 2007 and April 4, 2008, and Wells Fargo cannot establish that HOE I breached Section 7.11(b) of the Indenture.

### B.   Alleged Breach of Section 7.10(d) and the Granting Clause

Section 7.10 requires HOE I, when "enter[ing] into any material new agreements or arrangements" to "provide notice . . . to the Holders of the Notes and to the Rating Agencies." (Indenture § 7.10(d).)   Additionally, the Granting Clause of the Indenture provides that HOE I grants to Wells Fargo all of its right, title, and interest in the Collateral.   (Indenture at 1–2.)   Wells Fargo alleges that HOE I breached these provisions of the Indenture because it allegedly entered into an agreement with EAA, in which EAA agreed to indemnify HOE I for the costs of pursuing this litigation, without (1) disclosing the existence of the agreement to Noteholders or (2) delivering purported benefits or proceeds of the agreement to Wells Fargo.   However, Wells Fargo has not pled facts supporting any of these assertions.

Wells Fargo's basis for alleging that HOE I and EAA entered into an indemnification agreement rests on two invoices that Wells Fargo received from Rawlinson & Hunter, HOE I's agent, and addressed to HOE I and EAA, seeking payment for "professional services rendered in connection with the provision of Litigation support and fixed fee services."   (Ans. ¶¶ 14, 16.)   From these invoices, Wells Fargo surmises, "[u]pon information and belief, [that] HOE I has entered into one or more agreements or arrangements with respect to legal fees and expenses, pursuant to

which HOE I has agreed to divert Collateral assets to the payment of the legal fees and expenses of one or more law firms," that such "diversion of Collateral assets to the payment of legal fees and expenses would reduce the assets available to satisfy HOE I's payment obligations," and that "[a]ny such reduction of Collateral would have a material impact on Noteholders and Wells Fargo." (*Id.* ¶ 15.) Wells Fargo makes these speculative leaps without alleging any facts concerning the terms of the agreement(s) that would remotely support such inferences. Rather, Wells Fargo proceeds to make a series of wholly conclusory assertions that such a hypothetical agreement "*would* have a material effect on Noteholders and Wells Fargo because it *could* diminish the Collateral available" (*id.* ¶ 17) (emphasis added), and that "*if* EAA has agreed to indemnify HOE I with respect to legal fees and expenses (or otherwise) or to pay such amounts on HOE I's behalf, it *could* influence HOE I's conduct with respect to this action" (*id.* ¶ 19) (emphasis added). Wells Fargo also speculates that "*[t]o the extent* HOE I has failed to deliver cash Collateral, including monies paid in respect of legal fees and expenses incurred on HOE I's behalf, to [Wells Fargo]," HOE I would have breached the Granting Clause. (*Id.* ¶ 23.)

Under New York law, to plead a viable claim for breach of contract, a claimant must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the [claimant], (3) breach of the contract by the [counter-claimant], and (4) damages." *Eternity Global Master Fund Ltd.*, 375 F.3d at 177 (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). From the allegations described above, it is clear that Wells Fargo has failed to adequately allege a breach. First, Wells Fargo has offered little in the way of facts to support an inference that HOE I and EAA have, in fact, entered into an indemnification agreement concerning legal fees incurred in connection with this litigation. Second, even if Wells Fargo has sufficiently alleged the existence

of *some* agreement between EAA and HOE I, it has patently failed to allege the existence of an agreement with terms that would constitute a breach of the Indenture.  Wells Fargo alleges no facts about the size of the invoice – i.e., whether it exceeds HOE I's €50,000 per quarter "Administrative Expenses" allowance under the Indenture, which expressly authorizes the payment of legal fees (Indenture § 11.01(a)(i)(3)) – that would support an inference that the agreement is "material" as required by Section 7.10(d).  Wells Fargo's rhetorical bluster about the agreement permitting EAA to "wield the power of the purse" to manipulate HOE I's conduct of this litigation so as to further its own interests at the expense of other noteholders also has no basis in logic or fact.  EAA's interests are closely aligned with other noteholders because it only recovers if HOE I is successful in this action, and HOE I's underlying claims do not uniquely benefit EAA.  Furthermore, Wells Fargo has offered no support, beyond two invoices referencing "professional services," for its contention that the agreement enables EAA to steer HOE I's litigation of this suit for its gain and other noteholders' loss.  Wells Fargo makes an even greater leap in its contention that the alleged indemnification agreement produces some kind of "benefits or proceeds" that constitute Collateral that fall within the Granting Clause, obligating HOE I to deliver them to Wells Fargo.  Wells Fargo does not allege the existence of any contractual terms that would conceivably fall within the ambit of Collateral, let alone provide factual support for such allegations.

Finally, Wells Fargo's breach of contract claim fails for the additional reason that Wells Fargo has not adequately alleged that it suffered any damages from HOE I's alleged breaches of Section 7.10(d) and the Granting Clause of the Indenture.   Wells Fargo asserts that various hypothetical agreements between HOE I and EAA "would have a material impact on Noteholders and Wells Fargo" (Ans. ¶ 15) or "would have a material effect on Noteholders and Wells Fargo"

(*id.* ¶ 17), and therefore concludes that "HOE I's breach of the Indenture proximately caused Wells Fargo and/or the Noteholders damages" (*id.* ¶ 24).  Once again, Wells Fargo does not plead any facts to suggest that *Wells Fargo* suffered damages.  Rather, it argues that "lack of damages is not a valid basis for dismissal" because "a breach of contract claim is stated when the harm arises from an impairment of rights under the Indenture for which the party is permitted to enforce."  (Wells Fargo Op. at 22 (citing *Hildene Capital Mgmt., LLC v. Bank of New York Mellon*, 963 N.Y.S.2d 38, 40 (App. Div. 1st Dep't 2013).)  But *Hildene Capital Management* stands for the proposition that an Issuer has *standing* to assert a breach of contract claim against a Trustee in a CDO transaction.  Even assuming that *Hildene Capital Management* applies to a Trustee bringing claims against an Issuer, the mere fact that Wells Fargo has *standing* does not establish that Wells Fargo has adequately alleged the elements of a breach of contract claim.  Indeed, Wells Fargo's pleading with respect to damages is fatally deficient.

Therefore, the Court concludes that Wells Fargo has not sufficiently pled facts to support an inference that HOE I and EAA have in fact entered into an indemnification agreement, let alone one that would be "material," or that it would generate benefits or proceeds that constitute Collateral, such that HOE I breached the Indenture, or that Wells Fargo suffered any damages from the purported breach.  Accordingly, the Court concludes that Wells Fargo has failed to plead facts sufficient to support its counterclaim for breach of Section 7.10(d) or the Granting Clause of the Indenture.

## IV. CONCLUSION

In short, Wells Fargo's counterclaims have no basis in fact or in law and seem designed, principally, to undermine HOE I's ability to retain counsel and litigate this action.  Accordingly,

IT IS HEREBY ORDERED THAT HOE I's motion to dismiss Wells Fargo's counterclaims is granted and Wells Fargo's counterclaims are dismissed with prejudice.  The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 74.

SO ORDERED.

Dated:        March 31, 2015
              New York, New York

                                              _____
                                              RICHARD J. SULLIVAN
                                              UNITED STATES DISTRICT JUDGE